## The Provident Trust Company, Appellant, *v.* Geyer.

*Corporations—Officers—Stockholders—Trust and trustees—Accounts—Profits from sale of treasury stock—Equity jurisdiction.*

Where in a proceeding in equity by stockholders to require certain directors of a corporation to account for profits accruing from the sale of treasury stock it appears that the defendants took out certificates for the balance of treasury stock at par after entering into a contract for the sale of such stock at an advance,

and thereafter sold same at a profit; that at the time of such purchase the shares belonged to the corporation as unissued stock, and that the other stockholders had no knowledge of the agreement of sale at the higher price, the defendants will be decreed to be trustees for the stockholders of record when the sale was made and will be required to account to such stockholders for their respective shares of the profit according to their stockholdings at the time.

Argued Feb. 1, 1915. Appeal, No. 133, Oct. T., 1914, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1913, No. 1649, dismissing bill in equity for discovery and for an accounting in case of Provident Trust Company a corporation, Charles Ober, Henry Albrecht, James W. Dickson, Ida Kirschler and Annie K. Sauer, v. Charles Geyer, Joseph Stybr and Morris Einstein. Before BROWN, C. J., MESTREZAT, POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Bill in equity to declare a trust and for an accounting. Before FRAZER, P. J.

The facts appear by the opinion of the Supreme Court.

The court on final hearing dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings and the decree of the court.

*U. G. Vogan,* with him *Harvey S. Miller,* for appellant.

*J. Rodgers McCreery,* with him *McKee, Mitchell & Alter,* for appellee.

OPINION BY MR. JUSTICE ELKIN, March 8, 1915:

The main question for decision in this case is whether the 1,921 shares of the capital stock of the defendant corporation, which remained in the treasury as unissued stock until July 29, 1912, belonged to Geyer,

Stybr and Einstein, or to the corporation at the time of
the sale to Callery.  If these shares of stock were the
property of the three individuals named, they had the
right to dispose of them as they pleased and to sell them
at whatever price they could obtain; if on the other
hand, these shares belonged to the corporation as unis-
sued stock, and were sold by its directors, the proceeds
arising therefrom inured to the benefit of the corpora-
tion and not to the profit of the directors who made the
sale.  It will thus be seen that the rights of the parties
to this controversy depend upon the question of fact
above stated.  It is contended for appellees, that they
entered into an oral agreement in January, 1912, where-
by they became the purchasers of this stock, and al-
though they did not actually pay for the same and take
out the certificates until July 29, 1912, there was an
existing valid contract binding upon them as purchas-
ers, and if so, they had the legal right to regard this
stock as their own and to sell it for such price as they
agreed to take.  All of which is denied by appellants
and hence the necessity for a careful examination of
the record to the end that this controlling question be
properly determined.  It is argued for appellees that the
learned chancellor who heard the case with pains-taking
care found this fact in their favor and with the fact so
found there can be no reversal except for manifest error.
We do not so read nor understand the findings of the
learned chancellor, who found in substance, that on
January 1, 1912, defendants agreed orally to purchase
the "unsubscribed-for new stock," and while certificates
were made out, they were not signed by the president or
any other officer of the corporation and were never de-
livered to defendants:  These certificates, unsigned and
undelivered, were subsequently cancelled, when the cer-
tificates dated July 29, 1912, were issued and delivered
to the same defendants.  The learned chancellor also
affirmed the sixth request for findings of fact, which was
to the effect, that some time in January, 1912, defend-

ants discussed with other directors the necessity of taking up the unsubscribed-for stock, and had informed them that they (the defendants) would have to take the remainder of the issue and so notified the secretary. It is pertinent to remark that in neither of these findings does it appear that the chancellor intended to say the defendants had entered into contract with the corporation, binding inter partes, which obligated the corporation to sell and deliver and the purchasers to take and pay for. We have carefully read all of the evidence without being able to discover the existence of any contract, oral or otherwise, which the corporation could have enforced against the appellees. It is true that the appellees had some understanding among themselves to the general effect that they would purchase such shares of the new issue of stock as remained in the treasury unsold, and it is likewise true that the defendants discussed this question with some other directors and stockholders of the corporation. But the fact remains that they did not actually purchase the stock and take out the certificates until July 29, 1912, three days after the same defendants had entered into an agreement with Callery to sell their stock and such other shares as they could control for $64.00 per share. With this knowledge, which was not communicated to the other stockholders, they took out certificates for the unissued shares then in the treasury at $50.00 per share and immediately transferred these shares to Callery at $64.00 per share, thus making a profit to themselves of $14.00 per share. On the face of the record the bona fides of the transaction is against the contention of appellees.

A careful examination of the testimony fails to disclose any facts to justify the legal conclusion that there was any existing binding contract between the parties enforceable against appellees. It is not asserted, or even pretended, that any written subscription was signed, or that the secretary was directed to place a subscription upon the books of the corporation, or that the minutes

show any subscription for the stock in question; on the contrary, all the witnesses testified that no one at any time entered into any regular subscription contract, and the secretary stated that the stockholders when they purchased shares "simply got the stock when they came and paid for it." It also appeared in the testimony of the secretary that the alleged subscription by the defendants "was not at a board meeting," and that the circumstances upon which appellees contend there was a valid existing contract to purchase arose in the following manner: Someone said, "How are we going to get rid of the unsubscribed-for stock?" and one of the defendant's replied, "If we can't sell it outside, the doctor and Mr. E. and myself (meaning the other two defendants) will have to take it." Geyer, one of the defendants, testified as follows: "We agreed among ourselves to take it, the three of us," and when asked the question, "But you made no agreement with the company," he answered "No." To the same effect is the testimony of Einstein. Surely this testimony is not sufficient to sustain a finding that there was a binding legal obligation upon the defendants to take and pay for the unissued stock. In their contract with Callery the defendants designated the shares in question as "treasury stock," and there was nothing in that agreement to indicate a claim of ownership by defendants of the "treasury stock."

Our conclusion is that the unissued treasury stock which was sold to and purchased by Callery belonged to the corporation at the time of the sale, and that the appellees are not entitled to receive and hold the $14.00 per share, being the difference between the par value and the selling price, as a profit to themselves.

Just how to account for this profit, and who are entitled to the same, under the particular facts of the present case, are nice questions, and ones not free from difficulty. We have just decided that the unissued treasury stock belonged to the corporation, and it follows as of course that the proceeds of the sale, if the transaction

had been completed in the regular way, would have been paid into the treasury of the company, for such distribution as the stockholders chose to make. This was not done, and the appellees acting upon the belief that they had the right to purchase the treasury stock at par and sell it at the advanced price, retained the profits and appropriated them to their own use. It thus appears that the proceeds of the sale, represented by $14.00 a share profit upon the treasury stock, were never paid into the treasury of the corporation. It likewise appears in the agreement between appellees and Callery that his purchase at $64.00 per share, did not contemplate that $14.00 per share of the purchase price should be turned into the treasury and be deemed an asset of the corporation. He made no such claim, nor is any such contention set up here. In the sale of the shares of stock to Callery the intention of all the parties was that the purchaser took the property and assets of the corporation and the shareholders were to get $64.00 per share for all stock transferred under the agreement. Under these circumstances, it is too plain for argument, that the stockholders of record when the sale was made, are entitled to the full benefit accruing either to them as individual shareholders, or resulting from the sale of treasury stock in which they were interested to the extent of their respective holdings. It is but fair to say that those who purchased the stock, and who now represent the management and control of the corporation, make no claim to any part of this profit. Under the pleadings and the evidence, the present controversy is between the appellees, who claim the right to retain this profit, and the appellants, who as stockholders of record when the sale was made, assert their right to participate in that profit according to their respective holdings when the treasury stock was sold. Under these facts only one logical conclusion can be reached, and that is, the shareholders of record when the treasury stock was sold, are the ones entitled to participate in the profits of the

sale of the stock above its par value according to their respective holdings at the time.

We do not regard the question of jurisdiction either as to the parties or subject matter as being raised in the present case. Appellants sought equitable relief and appellees joined issue upon the merits without raising the question of jurisdiction. All parties submitted themselves to a court of equity for a determination of the matters in dispute between them, and the defendants have not raised the question of jurisdiction either in the court below or here.

The learned court below dismissed the bill upon the ground that the defendants were entitled to the $14.00 per share profit and had nothing to account for. In our opinion this was error and it therefore becomes necessary to reverse the decree.

There is some confusion in the record as to the exact number of shares of "treasury stock" sold to Callery. In this opinion we have mentioned 1,921 shares because that was the amount of stock claimed by appellants to have been in the treasury and unissued. If this is not the correct number of shares that fact can be ascertained by the court below when the case is again heard.

We entirely agree with the contention of appellants that the appellees should be decreed to be trustees for the stockholders of record when the shares were sold to Callery, and that they should be required to account to those stockholders for their respective shares of that profit according to their stock holdings at that time.

Decree reversed, bill reinstated and record remitted in order that a decree may be entered in conformity with the views expressed in this opinion and in Hechelman v. Geyer, 248 Pa. 430. The costs below and here to be paid by appellees.