I. Raymond KREMER, Receiver Manganese Corporation of America

v.

Perry N. SELHEIMER, Elliott C. Shull, M.D., Sheridan Bogan, Paul & Co., Inc., First Securities Corporation.

Civ. A. No. 31167.

United States District Court
E. D. Pennsylvania.
March 20, 1963.

Robert S. Grodinsky, Kaplan, Levy & Grodinsky, Philadelphia, Pa., for plaintiff.

David Bortin, Bortin & Frater, Philadelphia, Pa., for Sheridan Bogan and Paul & Co., Inc.

Harold B. Bornemann, Thomas G. Meeker, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Perry N. Selheimer, First Securities Corp. and Elliott C. Shull.

LUONGO, District Judge.

In this action for damages for alleged violations of the Securities Exchange Act of 1934 (hereinafter Act), defendants have moved to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted. Since diversity of citizenship is lacking, jurisdiction is founded solely on the Act.

Plaintiff is the state court appointed receiver for Manganese Corporation of America. The defendants named in the original complaint were Perry N. Selheimer, Elliott C. Shull, and corporate broker dealers Sheridan Bogan, Paul & Co., Inc., E. W. Smith & Co., Inc., G. Everett Parks & Co., Inc., Eaton & Co., Inc. and First Securities Corporation. Along the way plaintiff has dropped as defendants three of the corporate broker dealers, Parks, Smith and Eaton.

In substance, the original complaint alleged that the individual defendants, Selheimer and Shull, both of whom were directors of Manganese, purchased from Manganese at a private sale 15,000 shares of its Class A Common stock; that these defendants, through First Securities, which was the broker for the public sale of Manganese Class A Common stock, misrepresented facts concerning Manganese in the literature advertising the Manganese stock; that when First Securities was ordered to discontinue the public offer, Selheimer and Shull, with the cooperation of the other defendants, falsely created the impression of a market in Manganese stock and sold their shares to third persons at a substantial profit.

The defendants moved to dismiss the original complaint for failure to state a claim upon which relief could be granted or, in the alternative, for summary judgment. The defendants submitted affidavits in support of their motions for summary judgment and plaintiff submitted counter affidavits in opposition thereto. At oral argument on defendants' motions the court expressed doubt that plaintiff had stated a claim under the Act. Plaintiff insisted that he could supply the allegations necessary to bring his claim within the Act, and, at the court's suggestion, defendants withdrew their motions and plaintiff was granted leave to file an amended complaint.

Thereafter, plaintiff filed this amended complaint against Selheimer, Shull, Sheridan Bogan and First Securities. These defendants have now moved to dismiss for failure to state a claim upon which relief can be granted. The motions are before me.

This action is brought under Sections 10(b),[1] 15(c), 20 and 27 of the Securities Exchange Act of 1934 [15 U.S.C.A. 78j, 78o, 78t and 78aa] and Rules X–10B–5,[2]

1. *"Section 10.* It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 "(a) * * *
 "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. "Rule X–10B–5 Employment of Manipulative and Deceptive Devices.
 "It shall be unlawful for any person, directly or indirectly, by the use of any

X–15cl–2, X–15cl–4, X–15cl–6, and X–15cl–8 [17 C.F.R. §§ 240.10b–5, 240.15cl–2, 240.15cl–4, 240.15cl–6, 240.15cl–8] of the Securities and Exchange Commission promulgated thereunder. The foundation for plaintiff's claim is Section 10(b) and Rule X–10B–5, the other sections and rules cited above are merely supplementary and are not important to the decision of these motions.

The pleadings allege that:

Manganese was organized on January 6, 1959 under the laws of Pennsylvania to produce manganese compounds. It was authorized to issue 600,000 shares of stock, divided into 400,000 shares of Class A Common stock at a par value of $1 per share with preference as to dividends, distribution and liquidation, and 200,000 shares of Class B Common stock at a par value of 20 cents per share. All Class B Common shares were issued privately. Selheimer was a prime mover in the organization of Manganese and was a member of its board of directors from its inception until it was placed in receivership because of insolvency. During this period he was also president, director and controlling stockholder in First Securities, and from approximately August 15, 1959, until June 1960, he was an officer of Sheridan Bogan. Shull was a member of the board of directors of Manganese from May 18, 1959, to July 17, 1959. He, too, was a director and stockholder of First Securities.

At the first meeting of the board of directors of Manganese on January 19, 1959, under the planning and direction of Selheimer and Shull, two resolutions dealing with the issuance and sale of stock were adopted. One resolution authorized Manganese to enter into an agreement with First Securities for the public, intrastate sale [3] in Pennsylvania of up to 200,000 shares of Class A Common stock for $3 per share. The other resolution authorized the private offer and sale of 40,000 shares of Class A Common stock for $1 per share. Among the purchasers of this privately offered stock were several directors, including Selheimer, who purchased 10,000 shares, and Shull, who purchased 5,000 shares. After the private sale was concluded the public offering commenced. By June 10, 1959, First Securities had sold 148,000 shares, including 3,000 shares to relatives of Selheimer.

On June 10, 1959, the board of directors of Manganese was advised that the public sale was illegal because literature distributed by First Securities in connection with the sale contained untrue statements of material facts and omitted material facts necessary to make the statements "not misleading". The board adopted a resolution terminating the public sale, and Selheimer was instructed to terminate the sale of Manganese stock by First Securities. On July 8, 1959, the board of directors was again advised of the illegality of offering or issuing stock, and was informed that it was likewise illegal for directors, officers, controlling stockholders and their relatives to sell their stock. Notwithstanding these advices commencing in June 1959, and through several months thereafter, Selheimer, Shull and Selheimer's relatives sold substantially all of the Class A Common stock owned by them at prices exceeding $3 per share. These shares were distributed eventually to numerous public shareholders in and out of Pennsylvania. The public offer and sale of shares had been carried out by use of

means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud.

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

3. Exempt from registration under § 3(a) (11) of the Securities Act of 1933, 15 U.S.C.A. § 77c(a) (11).

facilities of First Securities and Sheridan Bogan and was aided by offers quoted in the "pink sheets" of the National Quotation Bureau, on information furnished by the broker defendants.

The amended complaint alleges (paragraph 16) that the purchase of 15,000 shares of Class A Common stock of Manganese for $1 a share was a fraud by Selheimer and Shull on Manganese which was being created by them for the purpose of selling its stock publicly at $3 per share so that in the after market the shares purchased by them at $1 could be disposed of at the higher prices which otherwise would have accrued to the corporation; (paragraph 24) that Selheimer and Shull were insiders who improperly used their position to make a personal profit not enjoyed by their fellow stockholders; and (paragraph 25) the issuance of 15,000 shares to Selheimer and Shull and 3,000 shares to Selheimer's relatives and the subsequent sale of those shares of stock by Selheimer, First Securities Corporation and Sheridan Bogan constituted a fraudulent scheme perpetrated on Manganese in violation of fiduciary duties and in violation of Section 10(b).

For the purpose of these motions, I accept as true the allegations of the amended complaint. I assume further, that the amended complaint sufficiently alleges that defendants engaged in deceptive or manipulative practices in connection with the sale of Manganese stock to the public. The issue here is whether plaintiff has alleged facts sufficient to support a claim on behalf of his predecessor in interest, Manganese. In order for plaintiff to state a claim under Section 10(b) and Rule X–10B–5, he must show that Manganese was a *defrauded seller*. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir., 1952). It is not sufficient to show that a third person, in a separate transaction, was defrauded. Slavin v. Germantown Fire Ins. Co., 174 F.2d 799 (3rd Cir., 1949).

The allegations of the amended complaint, hereinabove outlined, do not set forth any "manipulation" or "deception" practiced against Manganese by the defendants in the purchase of 15,000 shares of stock from Manganese. Such allegations as fall within the proscription of Section 10(b) and Rule X–10B–5 pertain to frauds practiced on those third persons who subsequently purchased the stock of Shull, Selheimer and Selheimer's relatives. The fraud perpetrated on such purchasers, without more, does not constitute fraud against the corporation, and the rights which may exist in those purchasers against the defendants under Section 10(b) and Rule X–10B–5 do not accrue to the issuing corporation's benefit. The bald assertion that the purchase of initial issue shares at $1 with the intention to sell them later at a profit was a "fraud" on Manganese does not furnish a sufficient factual foundation for a charge of fraud. The absence of factual averments to support such a charge is understandable for it is hard to see how the corporation was defrauded or harmed by what is alleged to have been done by the defendants. If anything, Manganese, however innocent, was a beneficiary of the deception practiced on the public in the sale of its stock at the price of $3 and more per share.

The inability to show harm to the issuing corporation notwithstanding fraud practiced on others, was one of the touchstones of decision in Slavin v. Germantown Fire Ins. Co., supra. In that case plaintiffs, in a shareholders' derivative suit, alleged a cause of action under Section 10(b) and Rule X–10B–5. The basis for the claim was the alleged fraud perpetrated by one Rosenlund in securing from third persons warrants to purchase stock in the corporation. The court rejected the contention that the corporation was entitled to relief under Section 10(b) and Rule X–10B–5, stating at page 807:

"Dominating the plaintiffs' general argument are references to fraud committed by Rosenlund upon his assignors, and the creation, by Rosenlund, of a situation making statements in the prospectus false. With respect to the former, obviously the

right of redress, if any, belongs to the assignors, and not to the corporation. With respect to the latter, similarly, the right of redress, if any, would seem to belong to those who purchased the securities."

Nor does it help for plaintiff to allege that Selheimer and Shull were "insiders" who breached fiduciary duties owed to Manganese [4] and profited thereby. Section 10(b) and Rule X–10B–5 were not designed for that purpose as pointed out by Judge Augustus Hand in Birnbaum v. Newport Steel Corp., supra. Judge Hand reviewed the history and purpose of Rule X–10B–5, pointing out that prior to its adoption there was no prohibition against fraud on a seller of securities by a purchaser unless the purchaser was a broker or dealer. The rule was adopted only to close that loophole. In answer to the contention that Section 10(b) and Rule X–10B–5 should not be so narrowly construed, Judge Hand said, 193 F.2d at pages 463–464:

" * * * appellants argue that such an interpretation of the Rule is too narrow to carry out the broad purpose of the Act to protect investors 'from exploitation by corporate insiders.' * * * We do not doubt that Congress was at least partially motivated by such a purpose in enacting the Securities Exchange Act of 1934, * * * However, the precise question here is whether Section 10(b) of that Act and the Commission's Rule X–10B–5 were the means chosen to further that end, and we are of the opinion that the legislative 'history' and 'purpose' quoted by

appellants are not persuasive that they were. When Congress intended to protect the stockholders of a corporation against a breach of fiduciary duty by corporate insiders, it left no doubt as to its meaning. Thus Section 16(b) of the Act of 1934, * * * expressly gave the corporate issuer or its stockholders a right of action against corporate insiders using their position to profit in the sale or exchange of corporate securities. The absence of a similar provision in Section 10(b) strengthens the conclusion that that section was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller."

Here the amended complaint fails to place plaintiff's predecessor in the category of defrauded seller and it is, therefore, fatally deficient. Plaintiff's difficulty throughout has been that he has misconstrued the scope and purpose of Section 10(b) and Rule X–10B–5. His construction would entitle Manganese, the issuing corporation, to claim the fruits of the fraud and deception which he contends was practiced by defendants on purchasers of Manganese stock. I read no intent in the legislation or the Rule to confer such a benefit on the issuing corporation.

Defendants' motions to dismiss will be granted.

---

4. The cases cited by plaintiff, Bailey v. Jacobs, 325 Pa. 187, 189 A. 320 (1937) and Provident Trust Company v. Geyer, 248 Pa. 423, 94 A. 77 (1915) are inapposite factually and, in addition, because they deal with common law actions for breach of fiduciary duty. Jurisdiction is lacking in this case to consider such claims.