**Robert J. O'NEILL, Plaintiff,**

**v.**

**Lewis B. MAYTAG, Jr., et al., Defendants.**

United States District Court
S. D. New York.
March 13, 1964.

Kaufman, Taylor & Kimmel, New York City, for plaintiff, Stanley L. Kaufman, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Lewis B. Maytag, Jr., William Piel, Jr., New York City, of counsel.

McLEAN, District Judge.

This is a stockholder's derivative action by a stockholder of National Airlines Incorporated ("National"). The complaint contains two counts. The first is against Pan American World Airways, Inc. ("Pan American"), and certain officers and directors of National. The second, although not so labeled in the complaint, is said to be against defendant Maytag only. Defendant Maytag moves under Rule 12(b) (1) and 12(b) (6) to dismiss the first count for lack of jurisdiction over the subject matter and for failure to state a claim. He moves, on affidavits, to dismiss the second count on the ground that it is moot. The two motions raise entirely different questions which will be separately considered.

The first count alleges in substance that in April 1962 defendant Maytag "and his associates" purchased 235,348 shares of the common stock of National, representing 12.71 per cent of its outstanding voting securities, 100,000 shares of which he sold in June 1962 to defendant Swim, that defendant Maytag became

a director and president of National and defendant Swim became chairman of its Board of Directors and that defendants Maytag and Swim "assumed control over the Board of Directors of National" and dominated the Board and the corporation. The complaint charges that in July 1963 defendants Maytag and Swim caused National to exchange 353,600 shares of Pan American stock owned by National for 390,000 shares of National stock owned by Pan American. It alleges that the market value of the Pan American stock which National thus sold to Pan American was $12,906,400, whereas the market value of the National stock which National thus acquired from Pan American was only $11,115,000, so that National lost approximately $1,800,000 by the exchange, and thereby an "illegal waste and spoliation of the assets of National" resulted. The complaint asserts that this transaction violated Section 409(b) of the Federal Aviation Act (49 U.S.C. § 1379(b)) and also "the Securities Exchange Act of 1934 and Rule X–10B–5 promulgated by the Securities and Exchange Commission thereunder." Jurisdiction of this court is asserted to exist under the Aviation Act, under the Securities Exchange Act of 1934 "and the principles of pendent jurisdiction."

█ Defendant Maytag takes the position that the complaint does not state a claim under either act and hence that this court lacks jurisdiction. It seems to be conceded that if this position is correct, the "principles of pendent jurisdiction" do not save the complaint, for in the absence of a proper showing in the complaint of a statutory basis of jurisdiction, there is nothing to which the claim may be said to "append." Howard v. Furst, 238 F.2d 790 (2d Cir. 1956), cert. denied, 353 U.S. 937, 77 S.Ct. 814, 1 L. Ed.2d 759 (1957).

Section 409(b) of the Aviation Act (49 U.S.C. § 1379(b)) provides:

"It shall be unlawful for any officer or director of any air carrier to receive for his own benefit, directly or indirectly, any money or thing of value in respect of negotiation, hypothecation, or sale of any securities issued or to be issued by such carrier, or to share in any of the proceeds thereof."

The complaint attempts to state a claim under this section by alleging that "one of the ends accomplished by the aforesaid transaction of purchase by National of the said 390,000 shares of its own stock was to consolidate, entrench and perpetuate defendants Maytag and Swim in their control of National and to eliminate any possibility of having their control of National diluted." This is said to constitute "personal benefits" to defendants Maytag and Swim, and these "personal benefits" are alleged to be "a thing of value" which defendants Maytag and Swim received by reason of the exchange of stock effected by the two companies.

Two questions arise on this branch of the case: (1) Does the Aviation Act confer upon a private individual a right of action for breach of Section 409(b)? (2) Does the conduct alleged in the complaint constitute a breach of that section of the act? On the first question, no direct authority has been found. It has been held that a private right of action is to be implied for a violation of Section 404(b) of the Act (49 U.S.C. § 1374(b)), the antidiscrimination section. Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2d Cir. 1956); Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (S.D.Calif.C.D.1961).

█ It is possible to draw a distinction between those cases and this one on the theory that Section 404(b) which forbids discrimination between passengers is intended for their individual protection and thus should be directly enforceable by them, whereas Section 409 (b) was not designed for the protection of any particular individual or class and hence should be enforced only by the Civil Aeronautics Board. I believe it unnecessary to decide this question, for in my view it is clear that, even if a private right of action for a violation of

Section 409(b) exists, there was no violation here upon the allegations of this complaint.

The section makes it unlawful for an officer or director of an air carrier to receive "any money or thing of value" in respect of the "negotiation, hypothecation or sale" of any "securities issued or to be issued by such carrier." It will be observed that here the "securities issued by such carrier" consisted of stock of National. This stock was not sold, it was purchased. It was not hypothecated. Unless the exchange can be said to be a "negotiation" of National's stock, the transaction is not within the statute. No case has been found which sheds any light on the meaning of the word "negotiation" in this context. Its normal meaning is to transfer or deliver, not to acquire. See 2 Bouvier Law Dictionary, Negotiate, p. 2330 (8th ed., Rawle's Third Revision 1914).

■ Moreover, and perhaps of more importance, did defendant Maytag, by National's acquisition of its stock, secure for himself any "money or thing of value?" It is not claimed that he received money. But it is said that he received a "thing of value," in the sense that his control of National was "entrenched" and that the "possibility of having [his] control of National diluted" was eliminated. These words seem to me to make empty phrases signifying nothing, or signifying nothing, at any rate, as far as Section 409(b) is concerned. They seem to mean that because National had acquired 390,000 shares of its stock from Pan American, Maytag's own 135,-348 shares thereafter represented a higher proportion of the total outstanding stock than it had previously represented. Whether this is so would seem to depend upon what National did with the stock after it acquired it. The complaint is silent as to that. Perhaps the allegation means that Maytag's position as a large stockholder was less vulnerable to attack now that an even larger stockholder had been eliminated. Whether this is so would seem to depend upon whether other persons owned even more stock than he

did, or than Pan American had. The complaint is silent as to that. In any case, even if the allegation can be construed to assert that Maytag received some intangible benefit, some enhancement of his importance in National's affairs, by reason of the purchase from Pan American, the question remains whether such an intangible benefit is a "thing of value" within the meaning of the statute. I do not believe that it is. If it were, then it would never be possible for an air carrier to buy any of its own stock when any of its officers or directors already owned some, for the directors would inevitably receive the same sort of "personal benefit" that plaintiff claims Maytag received. In the absence of any controlling authority either way, it is my opinion, and I so hold, that the statute was not intended to have this effect or to prevent what was allegedly done here. I believe that it was intended to prevent officers and directors from obtaining for themselves money or its equivalent, i. e., some tangible compensation, out of the sale of their company's stock. It follows that the complaint does not state a claim under Section 409(b) of the Aviation Act, and hence that that act does not confer jurisdiction of this action upon the court.

As to the second alleged basis of jurisdiction, i. e., the Securities Exchange Act of 1934, the complaint, after alleging the facts heretofore summarized, and after alleging in the broadest terms that "the acts and transactions complained of herein were performed by use of means and instrumentalities of interstate commerce and of the mails," adds a paragraph 28 which reads:

"The acts and transactions complained of herein involved the purchase and sale of National securities and, as hereinbefore alleged, the defendants in connection therewith employed the said device, scheme and artifice to defraud National and its stockholders, and the defendants engaged in said acts, practices and course of conduct which operated as a fraud and deceit upon National

and its stockholders, all to the benefit of said defendants and to the damage of National and which conduct is in violation of the Securities Exchange Act of 1934 and Rule X–10B–5 promulgated by the Securities and Exchange Commission thereunder."

■ Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j (b)), makes it unlawful for any person, by use of any means or instrumentalities of interstate commerce or the mails, to employ "in connection with the purchase or sale of any security * * * any manipulative or deceptive device" in contravention of the rules of the Commission. Rule 10b–5 implements the statute and in effect defines the statutory phrase "manipulative or deceptive device" by making it unlawful (1) to employ any device, scheme or artifice to defraud; (2) to make any untrue statement of a material fact or to omit to state a material fact; (3) to engage in any act which operates as a fraud or deceit. To come within the statute and the rule, the prohibited device must have been employed "in connection with the purchase or sale" of a security. Therefore it must have been employed against the purchaser or against the seller. It is only a party to the transaction of purchase and sale who may assert a claim under the statute. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

Here the claim is asserted on behalf of National, the purchaser of National's stock. Consequently, the question is whether the complaint sufficiently alleges that acts of the type prohibited by the statute were carried out against National, either by Pan American or by defendant Maytag or the other individual defendants.

■ The conduct prohibited by the rule must amount to either fraud or deceit, i. e., intentional misrepresentations of fact, or to an untrue statement of material fact or an omission to state a material fact. Fischman v. Raytheon Manufacturing Co., 188 F.2d 783 (2d Cir. 1951); 3 Loss, Securities Regulation, p. 1764 (2d ed. 1961).

In order to state a claim, the complaint must allege facts which constitute such conduct. Mere conclusions are insufficient. If the acts which are alleged to have taken place do not in themselves amount to fraud, deceit or material misstatements, a claim under the statute is not made out merely by characterizing those acts as a "scheme or artifice to defraud." Kremer v. Selheimer, 215 F. Supp. 549 (E.D.Pa.1963); Seward v. Hammond, 8 F.R.D. 457 (D.Mass.1948); See Hoshman v. Esso Standard Oil Company, 263 F.2d 499 (5th Cir.1959), cert. denied, 361 U.S. 818, 80 S.Ct. 60, 4 L.Ed. 2d 64 (1959); 2 Moore, Federal Practice, ¶ 8.13 pp. 1704–1707 (2d ed. 1962).

■ The conclusory language of Paragraph 28 of the complaint, therefore, adds nothing. As between the two parties to the transaction, National and Pan American, all that appears from the complaint is that National exchanged its Pan American stock for National's stock owned by Pan American. No fact is set forth which could amount to an allegation that Pan American deceived or defrauded or made any material misstatement to National. Moreover, no fact is set forth which could amount to an allegation that Maytag or the other individual defendants deceived or defrauded or made any material misstatement to National. It is true that the complaint alleges that National was damaged by the transaction and that Pan American conspired with defendants Maytag and Swim to damage National. In substance, the claim is that defendants caused National to pay too much for the stock. But damage is not synonymous with fraud. Not every purchaser of stock who suffers loss or pays too high a price for it has a claim for violation of Section 10 (b). What plaintiff has alleged here is a typical derivative stockholder's cause of action for waste and mismanagement on the part of the corporation's officers and directors. Plaintiff is at liberty to

prosecute such a claim, if he so desires, in the state court. He has not, however, stated a claim of which this court, in the absence of diversity of citizenship, has jurisdiction. Since the complaint fails to state a claim, either under the Aviation Act or under the Securities Exchange Act of 1934, this court lacks jurisdiction of the subject matter and the motion of defendant Maytag to dismiss the first count as against him must be granted.

The second count, based upon Section 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p(b)), seeks to recover for the benefit of National short-swing profits allegedly made by defendant Maytag as a result of sales and purchases of National's stock. It charges that on June 1, 1962 he sold 100,000 shares of that stock and that within six months from the date of the sale, he purchased "a substantial number of shares of National at an undisclosed profit."

Defendant Maytag moves to dismiss this count on the ground that the claim is moot. He submits an affidavit in which he states that he did in fact make such a short-swing profit in the amount of $24,336.46, that his violation of Section 16(b) was "inadvertent and unintentional," and that he paid the entire $24,-336.46 to National on September 27, 1963. It appears that this date was subsequent to the commencement of this action.

Defendant Maytag asserts that his motion is made under Rule 12(b) (1) on the theory that this court lacks jurisdiction of the subject matter of the claim because it is moot. This seems to be a mere play on words. Obviously this court has jurisdiction of a claim for violation of Section 16(b). It is equally obvious from defendant's own affidavit that there has been a violation here. This motion in effect is a motion for summary judgment based upon a defense of payment, a defense which has not as yet been formally asserted in a pleading, for no answer has yet been filed. The facts of defendant Maytag's dealings in National's stock are peculiarly within his knowledge and not within the knowledge of plaintiff. I believe that under these circumstances, plaintiff should be afforded a reasonable opportunity to examine into the facts by appropriate discovery proceedings, as is contemplated by Rule 56(f). See 6 Moore, Federal Practice, ¶ 56.24 at p. 2345 (2d ed. 1953).

It may turn out that discovery will yield no evidence of any violation of the statute for which National has not been paid. In that event, defendant Maytag is free to move for summary judgment after discovery proceedings have been completed. To dismiss the second count at this stage, however, would be premature.

Defendant Maytag's motion to dismiss the first count is granted. His motion to dismiss the second count is denied.

So ordered.