**Rose B. CHASHIN, Plaintiff,**

v.

**William H. MENCHER et al., Defendants.**

**No. 64 Civ. 1579.**

United States District Court
S. D. New York.

June 10, 1965.

Israel Beckhardt, New York City, for plaintiff.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant John I. Taeni.

Robert D. Marcus, New York City, for defendant Virginia Iron, Coal & Coke Co.

Stroock, Stroock & Lavan, New York City, for defendants Premier Investing Corp. and Richard Weininger.

Stein, Abrams & Rosen, New York City, for defendants Stevenson & Bates Mfg. and F. X. Carroll.

Beekman & Bogue, New York City, for defendants Joseph A. Aylward and William L. Bivona.

## MEMORANDUM

TENNEY, District Judge.

Certain of the named defendants (being the only defendants served herein) move, pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure for dismissal of the second amended complaint for failure to state a claim upon which relief can be granted.

Plaintiff, a stockholder of defendant Virginia Iron, Coal & Coke Company (hereinafter referred to as "Virginia Iron"), whose stock is traded on the American Stock Exchange, purports to bring this action individually and as a representative of all of the stockholders of Virginia Iron, claiming a violation by all of the defendants of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b) (1958), and Rule 10b–5 promulgated pursuant thereto (17 C.F.R. § 240.10b–5).

Jurisdiction of this Court is invoked by plaintiff solely under Section 27 of the Securities Exchange Act (15 U.S.C. § 78aa).

Paragraph 2 of the Complaint states that all of the individual defendants were directors of Virginia Iron, and Paragraph 3 recites that all of the defendants violated Section 10(b) and Rule 10b–5 "by the use of means and instruments of transportation and communication in interstate commerce, and by the use of the mails" and that

"they [the defendants] employed manipulative and fraudulent devices, schemes and artifices to defraud the plaintiff and persons similarly situated by engaging in transactions, practices and courses of business which operated as a fraud and deceit on plaintiff and persons similarly situated as holders of the Corporation's [Virginia Iron's] common stock."

Paragraph 4 refers to defendant Premier Investing Corporation as being wholly owned and controlled by defendant Weininger.

In Paragraph 5, the plaintiff avers:

"Prior to December 19, 1961 plaintiff bought and sold 100 shares of the Corporation's [Virginia Iron's] common stock and received 11 shares thereof as stock dividends. On December 19, 1961 plaintiff sold 10 shares of the Corporation's common stock, leaving her with one share thereof. Thereafter the plaintiff bought 200 shares of the Corporation's common stock on August 27, 1962, sold 100 shares on January 22, 1963 and 100 shares on April 30, 1963, and bought 25 shares on April 18, 1964. At the time of the commencement of this lawsuit plaintiff was the owner of 26 shares of the Corporation's common stock."

Paragraph 6 states that during the period from approximately January 1 through November 8, 1963, inclusive, the Board of Directors of Virginia Iron (most of whom are defendants) was faced with a choice between a proposal of Pacific Seaboard Land Company (hereinafter referred to as "Pacific"), and a proposal of the defendant Bates Manufacturing Company (hereinafter referred to as "Bates").

Paragraphs 7 and 8 outline both the Pacific and Bates proposals, and in Paragraph 9 the plaintiff avers that the defendant directors of Virginia Iron on or about November 18, 1963, accepted the Bates proposal, rejecting the Pacific proposal, which acceptance resulted in a sale by certain of the defendant directors to Bates of the common stock of Virginia Iron owned by them at a price of $12 per share and their resignation as directors in favor of nominees of Bates.

In Paragraph 10, the plaintiff states that the sale price of $12 per share was $2 above the market, "the premium being paid by Bates to the said defendant di-

rectors to obtain control of" Virginia Iron.

Plaintiff, in Paragraph 11, avers that both Virginia Iron and its stockholders "would have been better off if the Pacific proposal had been accepted instead of the Bates proposal" and that the judgment of the defendant directors in accepting the Bates proposal and rejecting the Pacific proposal "was not an honest exercise of their discretion and business judgment * * * but was dictated by wholly selfish considerations in direct violation of their fiduciary duties" to Virginia Iron and its stockholders, thereby depriving Virginia Iron "of the possibility of a valuable acquisition and depriving the stockholders of the opportunity to sell 20% of their shares at $13.75 or $3.75 above the market. * * *"

Paragraph 12 states that by accepting the Bates proposal rather than the Pacific proposal "only certain defendant directors derived any benefit, i. e., the sale of all their shares at $12 per share, with no benefits whatever" to Virginia Iron or the stockholders.

Paragraph 13 contains the conclusory averment that:

"The action of the director defendants set forth above constituted manipulative practices prohibited by the Securities Exchange Act of 1934."

In Paragraph 15, plaintiff recites the reasons why a demand to institute suit is unnecessary, and Paragraph 16 states that the acts of the defendants not only were in violation of "federal law" but also in violation of the "fiduciary duties of the defendant directors owed by each of them" to Virginia Iron and its stockholders.

The relief sought would require the defendants to "account to the stockholders as a group" for their acts and conduct, and "to pay over to the stockholders" the amount of such loss as may be found on such accounting to have been sustained by the stockholders.

From the allegations contained in Paragraph 5 of the Second Amended Complaint, it seems clear that, as of April 30, 1963, some seven months prior to the acceptance of the Bates proposal by the directors of Virginia Iron, until April 18, 1964, five months after such acceptance, plaintiff's total holdings of Virginia Iron's stock remained at one share. Although plaintiff alleges in Paragraph 6 that the defendant directors were faced with a choice from approximately January 1 to November 18, 1963, between the Bates and Pacific proposals, she did not wait to see which proposal would be accepted but disposed of 200 of her 201 shares at least seven months before said defendants acted in respect of the Bates proposal. Plaintiff does not allege that the sale of the 200 shares in January and April of 1963 were brought about by the acts of defendants. It is clear that plaintiff neither purchased nor sold stock of Virginia Iron as a result of any of defendant directors' acts and that on November 18, 1963, when the Bates proposal was accepted, plaintiff was the owner of one share of Virginia Iron's common stock which she still owns.

Plaintiff does not allege that she purchased any of said stock from or sold any thereof to any of the defendants or that she made, or was induced to make, any purchases or sales by reason of any fraudulent statements or acts by any of the defendants. The gravamen of plaintiff's second amended complaint is her loss of opportunity to sell to Pacific 20 percent of her holdings at $13.75 per share and the deprivation of Virginia Iron of "the possibility of a valuable acquisition." What plaintiff is really complaining about is the alleged mismanagement of corporate affairs by the directors.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful for any person "by the use of any means or instrumentality of interstate commerce or of the mails * * * (b) [t]o use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] may

548

prescribe * * *." Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated pursuant to that section, expands on the statutory language and in effect defines the statutory phrase "manipulative or deceptive device" by making it unlawful for any person, directly or indirectly: (1) to employ any device, scheme or artifice to defraud; (2) to make any untrue statement of a material fact or to omit to state a material fact; or (3) to engage in any act which operates or would operate as a fraud or deceit.

 To come within the embrace of the statute and the rule, the prohibited device must have been employed "in connection with the purchase or sale" of a security and must have been employed against the purchaser or against the seller. "It is only a party to the transaction of purchase and sale who may assert a claim under the statute." O'Neill v. Maytag, 230 F.Supp. 235, 239 (S.D.N.Y.), aff'd, 339 F.2d 764 (2d Cir. 1964); accord, Cooper v. North Jersey Trust Co., 226 F.Supp. 972, 978 (S.D.N.Y. 1964); New Park Mining Co. v. Cranmer, 225 F. Supp. 261, 266 (S.D.N.Y. 1963).

 Plaintiff's attorney, recognizing (Page 4 of Plaintiff's brief) the authority of O'Neill v. Maytag, supra, attempts to tie in the rejection of the Pacific offer with the sale by plaintiff of her stock (Page 5 of Plaintiff's brief). However, the pleadings verified by plaintiff allege that the rejection of the Pacific offer was contemporaneous with acceptance of the Bates offer on November 18, 1963, at least seven months after plaintiff sold the only stock involved herein.

Directly in point is the case of Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). In that case, a minority stockholder alleged that a sale of a former insider's stock to another corporation at a large profit without giving the minority the right to sell at the same price operated as a fraud upon both the corporation and the minority in violation of Rule 10b–5. The Court held that neither Section 10–b nor Rule

10b–5 was applicable. See O'Neill v. Maytag, 339 F.2d 764, 768 (2d Cir. 1964) (citing the *Birnbaum* case with approval). The second amended complaint herein fails to place plaintiff in the category of a defrauded seller or purchaser and it is, therefore, fatally deficient. Kremer v. Selheimer, 215 F.Supp. 549 (E.D.Pa.1963); Birnbaum v. Newport Steel Corp., supra.

Plaintiff cannot cure this defect by claiming that she is suing representatively. 3 Moore, Federal Practice ¶ 23.04 (2d ed. 1963).

Accordingly, it is unnecessary to determine whether the complaint is fatally defective for failure to allege specific acts of misconduct constituting fraud and deceptive practices. See O'Neill v. Maytag, 230 F.Supp. at 239; 339 F.2d at 767–768.

While plaintiff may have a cause of action under state law, no diversity of citizenship is alleged which would give this Court jurisdiction.

Accordingly, defendant's motion to dismiss the second amended complaint is granted.

So ordered.