**William DASHO et al., Plaintiffs,**

v.

**The SUSQUEHANNA CORPORATION et al., Defendants.**

**No. 65 C 1757.**

United States District Court
N. D. Illinois, E. D.

April 15, 1966.

On Rehearing June 28, 1966.

---

Lawrence A. Jacobson, Ira S. Kolb, Adolf Loeb, Chicago, Ill., for plaintiffs.

Melvan Jacobs, Charles Leist, Alfred Bianucci, Joseph Kostner, Robert Mansell, Chicago, Ill., for defendant, Susquehanna Corp.

Robert Mansell, Chicago, Ill., for defendant, Stuart.

Samuel Weisbard, Stephen Sandels, Chicago, Ill., for defendant, Lauhoff.

Joseph A. Sommer, Santa Fe, for defendant, American Gypsum Co.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Motion of Defendants to Dismiss.

This is a two-count action purportedly arising under the Securities Act of 1933 and the Securities Exchange Act of 1934. In Count I, plaintiffs, shareholders of The Susquehanna Corporation, have sued derivatively for injunctive relief and damages, asserting violations by defendants of Section 17(a) of the 1933 Act (Sec. 77q, Title 15, U.S.C.), Section 10(b) of the 1934 enactment, (Sec. 78j, Title 15, U.S.C.) and Rule 10b–5 of the Securities Exchange Commission promulgated thereunder. Jurisdiction is based on Section 22(a) of the 1933 Act and Section 27 of the 1934 Act respectively. (Secs. 77v, 78aa, Title 15, U.S.C.). In essence, plaintiffs charge that prior to March 25, 1965, thirteen individual defendants, hereinafter referred to as the "Lannan Group" entered into a conspiracy with defendant H. F. Korholz, under which they, upon election as directors of Susquehanna, would sell or cause to be sold to Korholz 435,000 shares of Susquehanna stock for $6,525,000, a sum alleged to be $1,740,000 in excess of the fair market value of such shares, and then pass control of said corporation to Korholz through planned resignation and election of directors. Upon accomplish-ing this result, it is alleged, Korholz, as a part of the conspiracy, transferred the aforesaid shares to the American Gypsum Co., in connection with which said company incurred a bank loan for substantially all of the purchase price. Thereafter, it is asserted, Korholz caused the Board of Directors of Susquehanna to approve a merger of the two companies, under which Susquehanna assumed the bank loan, and, in effect, acquired the 435,000 shares at the excessive price. This, plaintiffs contend, constituted a fraudulent sale of securities to Susquehanna, and, derivatively, to them, in violation of the aforesaid statutes. Further, it is alleged, in Count I, that the defendants herein, under threat of a shareholder's derivative suit by a Kansas City group, caused Susquehanna to transfer in May, 1965, 140,000 shares of common stock of Vanadium Corporation of America to said shareholders for a price, paid in Susquehanna stock and boot, $700,000 less than its true market value. By causing such sale to be made, without disclosing the threatened derivative suit, it is alleged, defendants further violated Section 17(a) and Section 10(b).

In Count II, added on December 21, 1965, as the Third Amendment to the Complaint, plaintiffs allege that in furtherance of the aforesaid scheme, defendants caused Susquehanna to disseminate a false proxy statement in violation of Section 14(a) of the 1934 Act (Sec. 78n, Title 15, U.S.C.) and S.E.C. Rule 14a–9 promulgated thereunder.

All defendants have filed motions herein requesting dismissal of both counts. As all these motions are predicated on similar grounds, except for the motion of defendant Lauhoff as to Count II, they will be considered by this Court as one.

We must initially be concerned with defendants' assertions that the Complaint at issue fails to state a cause of action under the Securities Acts, and thus, in the absence of diverse citizenship among the parties, must be dismissed for lack of federal jurisdiction.

As we have several times held, Sections 17(a) and 10(b), are of limited scope, having been drafted by Congress and the Securities Exchange Commission (Rule 10b–5) to protect sellers and purchasers of securities from persons who seek to defraud them in such sales. It is clear that only *parties* to a sale, however fraudulent, can maintain a suit under the aforesaid sections. Birnbaum v. Newport Steel Corp. (2d Cir. 1952), 193 F.2d 461, at page 464, cert. den. 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, (1952):

> " * * * that section [10(b)] was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs and Rule X–10b–5 extended protection only to the defrauded purchaser or seller."

See also Jachimec v. Schenley Industries, Inc. (7th Cir., 1965) Cause No. 15,027, approving *Birnbaum,* supra; Keers & Co. v. American Steel & Pump Corp. (D.C.N.Y., 1964), 234 F.Supp. 201.

Thus, no meaningful determination can be made without an analytical breakdown of the multi-faceted transaction before us. It is clear, to begin, that some line must be drawn between the Lannan-Korholz sale and the Susquehanna-Gypsum merger. While certain defendants may well have intended both actions to occur, and, indeed, participated in one in anticipation of the other, it would be improper to gloss over the facts and look only to end results.

We are satisfied that, under *Birnbaum,* supra, the Lannan-Korholz sale is not actionable by these plaintiffs under the Federal Securities laws. None of the plaintiffs, nor Susquehanna, on whose behalf plaintiffs derivatively sue, was a party to that sale. Their injury, if any, came as a result of the merger, or from a breach by defendants of a fiduciary duty owing to them, but, surely, plaintiffs and Susquehanna were not in any way defrauded by that initial private sale to which they were not privy.

Therefore, if plaintiffs are to have standing here, it will have to be derived from the merger itself. That is, the gravamen of the offense, as plaintiffs repeatedly assert in their brief, is based on the forced acquisition by Susquehanna of the 435,000 shares sold by its directors at an inflated price, through the merger with Gypsum. This merger is the only transaction to which Susquehanna, and plaintiffs, were direct parties, and is the transaction which must be scrutinized in connection with Sections 17(a) and 10 (b).

We must conclude that the merger as stated in the complaint is not actionable under the fraudulent sale provisions of the Securities Acts. A statutory merger of the type with which we are concerned results in the automatic *involuntary* conversion of one type of security into another. That is, Susquehanna stock was not "sold" for shares of Gypsum, but, rather, upon merger, the corporation converted shareholders' security from one form to another. This distinction was clearly upheld by the Ninth Circuit Court of Appeals in National Supply Co. v. Leland Stanford Jr. University (9th Cir., 1943), 134 F.2d 689, at p. 694:

> "The Securities and Exchange Commission has filed an exhaustive brief *amicus curiae* indicative of its view that the consolidation did not involve a 'sale' of securities, or an exchange amounting to a sale, hence the civil liability provisions of the Act have no application. Without going into the matter, we may say that we are in accord with the views of the Commission."

See also Sawyer v. Pioneer Mill Co., Ltd. (D.C.Haw.1960), 190 F.Supp. 21, 23, remanded on other grounds (9th Cir., 1962), 300 F.2d 200; Borak v. J. I. Case (7th Cir., 1963), 317 F.2d 838, 846–847, affd. 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Barnett v. Anaconda Co. (D.C.N.Y.1965), 238 F.Supp. 766, 776.

Secondly, we are of the opinion that, even if an actionable "sale" was

involved, plaintiffs have failed to state a cause of action under Sections 17(a) and 10(b). That is, while plaintiffs in their briefs charge in conclusory fashion that by reason of the merger Susquehanna was "defrauded" into purchasing its shares at a premium price, the facts alleged in the complaint do not even allege such a conclusion. The relevant portions of the complaint assert only that pursuant to the merger, Susquehanna would acquire its own shares at a price higher than their actual value. Such an allegation, even if true, does not in itself state a cause of action under the securities laws. O'Neill v. Maytag (D.C.N.Y., 1964), 230 F.Supp. 235, 239, affd. (2d Cir., 1964), 339 F.2d 764. The pleadings complain of no misstatements, omissions, or fraud, only that defendants, through their actions caused Susquehanna to purchase its shares at an inflated price. This, once again, may constitute corporate mismanagement, but hardly fraud in the sale of securities, as delineated in the statutory sections at issue.

In the same vein, it must be noted that the pleadings indicate full disclosure to plaintiffs, rather than deceit upon which an action as this must be founded. As we understand it, plaintiffs complain primarily of the fact that Susquehanna was caused to assume a $6,450,000 liability of Gypsum, through merger, and thus, was to acquire 435,000 shares of its own stock at a price $1,740,000 in excess of its fair market value. Yet it is clear that such merger, to be consummated, required a favorable vote of its shareholders, and that said shareholders before approving the merger received a proxy statement detailing the following facts:

1) That the instant lawsuit was in progress; proxy statement pp. 27–28;

2) That the Lannan group transferred 430,000 shares to Korholz at $15.00 per share, with the proviso that Korholz was to be elected chairman of the Board of Directors of Susquehanna, and that other elections and resignations were to follow; p. 36;

3) That Gypsum thereafter acquired said shares from Korholz, borrowing $6,450,000 to complete the transaction, p. 37; and

4) That said liability of Gypsum was to be assumed by Susquehanna in the merger, p. 8.

Where is the deceit? Plaintiffs were fully informed of the details of which they complain before the merger was consummated. Where said full disclosure is present, and plaintiffs were free to invoke their rights of appraisal at the time of the merger, we fail to see how the merger complained of, even if it were considered a sale, runs afoul of the Securities Acts.

These actions by Susquehanna's directors and officers may well constitute a breach of fiduciary duty, mismanagement, and corporate waste. And, indeed, defendants may be subject to cause of action arising under State law. This, however, does not confer jurisdiction on the United States District Courts.

■ We must reach the same conclusion with regard to the sale of Vanadium Corporation stock to the Kansas City group, set out in paragraphs 17 and 18 of Count I. At best, these paragraphs reveal that defendants caused the corporation to make a disadvantageous trade of shares so as to forestall a shareholders' derivative suit and to perpetuate existing management. While Susquehanna and, derivatively, plaintiffs, may well have suffered damage as a result of defendants' actions here, such liability as is alleged does not fall under the umbrella of the Securities Acts, and must be dealt with in the State Courts. Defendants may well have caused Susquehanna to overpay in the aforesaid transaction, so as to preserve their position, and in doing so, may have been guilty of mismanagement. Under O'Neill v. Maytag, supra, however, this is not enough. Once again we are forced to look for the "fraud" on which a Section 10(b) action must be based. Perhaps defendants omitted to inform Susquehanna of the reason they wished this sale to be made. But such non-disclosure of motive does not qualify as a "material fact" under Rule 10b–5. Susquehanna was aware of

the price it was paying, and the value it received in return. There were no false statements made about these facts. The remedy, if any, must lie in a State forum.

Accordingly, the motion of all defendants to dismiss Count I is granted.

■ Defendants, except Lauhoff who relies on substantive grounds, have moved to dismiss Count II on the grounds that an identical action arising out of alleged false statements made in Susquehanna's proxy statement of November 12, 1965, was filed before Judge Austin of this Court on December 7, 1965 (65 C 2051) two weeks before said count was added to the instant action. In the interests of judicial economy, we should not rule on the substantive merits of defendants' claims at this time. Rather, pursuant to Rule 10, subd. B(6) of the General Rules of the United States District Court for the Northern District of Illinois (adopted May 1, 1965) we shall transfer Count II, which is all that remains before us, to the Executive Committee, with a view towards consolidation of the two related suits pending in this District. We interpret Rule 10, subd. B(6) to require transfer of the instant action to Judge Austin, whose related case was filed *before* the Amendment here which instituted the Count at issue. This would prevent unnecessary double work should Judge Austin have begun consideration of the suit before him, the presumed underlying purpose of the Rule. If the Executive Committee should decide to read the section literally, however, as to "later numbered case," we would advise that counsel move to have the action pending before Judge Austin transferred here.

No substantive action should be taken until the two related suits are before a single court, however, and the presiding judge is fully informed by counsel in both suits of the possibilities for consolidation.

Memorandum Opinion on Motion of Plaintiff for Rehearing.

On April 15, 1966, this Court issued a memorandum opinion granting the motion of defendants to dismiss Count I of the instant action for failure to state a claim over which we could assert federal jurisdiction under Section 17(a) of the Securities Act of 1933 (Sec. 77q, Title 15, U.S.C.), Section 10(b) of the Securities Exchange Act of 1934 (Sec. 78j, Title 15, U.S.C.) and Rule 10(b)–5 of the Securities Exchange Commission promulgated thereunder. In reaching this ultimate conclusion, we held that the exchange of shares pursuant to the statutory merger complained of, did not constitute an actionable "purchase" or "sale" of securities under the above statutory section, and further, even if such a "sale" were present, that the complaint before the Court failed to properly allege fraud or non-disclosure, a prerequisite to recovery.

Plaintiffs have moved for rehearing by the Court of said opinion, setting forth six grounds for reconsideration. Having concluded previously that five of said grounds did not merit reconsideration, this Court ordered the parties herein to file additional briefs on the general question of whether the exchange of shares pleaded in the complaint is actionable under the "fraudulent sale" provisions of Section 17(a) and Rule 10(b)–5, which question we felt warranted further consideration and clarification. In making this order, the Court fully recognized, as it does today, that while a reversal on this point might affect the issues on appeal, if plaintiffs pursue that course, it could not alter our ultimate conclusion which was based as well on the alternative ground discussed above—that Count I fails to adequately allege deception or fraud in the purchase or sale of securities.

Having read and considered all the papers filed herein including the *amicus curiae* brief filed by the Securities and Exchange Commission in Mann et al. v. Kuhn et al., pending in the Southern District of Indiana, we shall reaffirm our original decision today, and expand upon our reasons for doing so.

As inferred in our April 15 discussion, a statutory merger has breadth far

greater than that found in the ordinary purchase or sale of securities. It involves the total absorption of one corporation by another, and, as such, is controlled by many factors dealing with the future of the combined enterprise, including tax considerations and corporate growth, not present in the latter type transaction. The exchange of American Gypsum shares for those of Susquehanna, which is made the subject of the complaint before us, was merely incidental to the major transaction, and, except by a strained technical argument, should not be considered as a simple sale. Such exchange is a mere formality, and, indeed, is *involuntary* in nature once the merger itself has been approved. Thus, while plaintiffs may validly complain of fraudulent proxy statements under Section 14(a) of the 1934 Act which led to the approval of the proposed merger, as they do in Count II herein, it would be illogical to permit a "fraudulent sale" count to stand when the "sale" consisted of no more than a formal conversion incident thereto, over which the shareholders had no control once the merger was approved.

■ Indeed, the authorities seem to clearly indicate that misrepresentations and nondisclosures with regard to a merger proposal, which is, in reality, what plaintiff complains of, should properly be redressed in a Section 14(a) action. See Borak v. J. I. Case Co. (7th Cir., 1963), 317 F.2d 838, *affd.* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Barnett v. Anaconda Co. (D.C. N.Y., 1965), 238 F.Supp. 766.

■ This is not to say that where a corporation issues its own shares for assets or securities of another corporation that an action under Section 17(a) or Rule 10(b)–5 could not be stated. In such a situation, there exists the opportunity for fraud to induce the actual sale or purchase, unlike the statutory merger situation, where the merger but not the formal, involuntary conversion of shares may be affected. It is on just such a distinction that four of the cases relied on by plaintiffs can be dis-

posed of, to-wit: Hooper v. Mountain States Securities Corp. (5th Cir., 1960), 282 F.2d 195; Kane v. Central American Mining and Oil, Inc. (D.C.N.Y. 1964), 235 F.Supp. 559; Ruckle v. Roto American Corp. (2d Cir., 1964), 339 F.2d 24; and Dembitzer v. First Republic Corp. (D.C.N.Y.1964), CCH Fed. Sec. L. Rep., Par. 91,445.

Similarly, a reading of H. L. Green Co. v. Childree (D.C.N.Y.1960), 185 F.Supp. 95, as clarified by the subsequent opinion of the Second Circuit Court of Appeals in H. L. Green Co. v. MacMahon (2d Cir., 1962), 312 F.2d 650, 651, reveals that the merger therein was with a wholly owned subsidiary, and thus followed the purchase by plaintiff of all the stock of the merged corporation. It is apparent that in *Green,* the alleged fraud related not to the merger itself, but rather to the voluntary purchase of shares. This is precisely the distinction set forth above, and the case must be considered to be inapposite.

Finally, while Voege v. American Sumatra Tobacco Corp. (D.C.Del.1965), 241 F.Supp. 369, did involve the involuntary exchange of stock pursuant to a statutory merger, it would appear from our reading thereof, that the Court attached the alleged deceit to an acquisition by plaintiff of stock in the acquired company years prior to the merger and formal exchange. Further, that case, which notably, the U. S. District Court for the Southern District of New York has expressly declined to follow (See Vine v. Beneficial Finance Co. (D.C. N.Y., 1966), 252 F.Supp. 212), involved a merger under Delaware Corporation Law, which provides for consolidation of a parent and its 90 per cent owned subsidiary without any vote of the shareholders of either corporation.

In contrast, we find significant authority attesting to the correctness of our decision in the cases cited by defendants and referred to in our April 15 opinion.

In National Supply Co. v. Leland Stanford Jr. Univ. (9th Cir., 1943), 134 F.2d 689, the Court held that no cause

of action existed under Section 12(2) of the 1933 Act because the statutory "consolidation did not involve a 'sale' of securities, or an exchange amounting to a sale * * *." While plaintiffs assert that the *Leland Stanford* case is limited, and that the definition of sale involved therein does not apply to Rule 10(b)–5 actions, we cannot agree. We must assume that the Court in the above case accepted the then official position of the S.E.C., as stated in its *Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees*, Part VII, p. 249, f. n. 172 (1938), which report was transmitted over the signature of Mr. Justice Douglas, then Chairman of the S.E.C., and was prepared by named members of the Commission staff, including Mr. Justice Fortas. That report clearly stated, in point:

" * * * it is essential to a 'sale' under Section 2(3) [the definition provisions applying to the entire Act] that the prospective purchaser have the right individually and voluntarily to elect whether or not to purchase. In the case of the typical consolidation, merger, or sale of assets, this essential volition on the part of the individual shareholders is absent."

While it is apparent from the *amicus curiae* brief submitted in the *Kuhn* case, referred to above, that the S.E.C., as an advocate, has changed its views, it is noteworthy that the Ninth Circuit Court of Appeals accepted the logic of its initial opinion, and that Congress, while aware of this attitude, and of the *Leland Stanford* decision, has not acted to alter the language of the section involved although it has had 23 years to do so, and, indeed, has enacted many other amendments during that period. While the S.E.C. may wish now to propose a new approach, it does so as an advocate alone, and we are certainly not bound to accept their arguments when we conclude that they are opposed to the logic of the only existing Court decisions in point, and to the intention

of Congress as manifested by its inaction in this area. See Safeway Stores v. Bowles (U.S. Emergency Ct. of App., 1944), 145 F.2d 836, *cert. den.* 324 U.S. 847, 65 S.Ct. 683, 89 L.Ed. 1408.

In addition, we cannot accept plaintiffs' view that the Court in *Leland Stanford* merely adopted the "no-sale" theory codified by the S.E.C. in Rule 133. Plaintiffs argue that under said rule, the issuance of stock upon a merger will not be considered a sale for registration purposes under Section 5, and that inasmuch as the rule specifically states that it does not apply to other sections of the Act, defendants cannot seek an exemption under Section 10(b). It is abundantly clear that the Ninth Circuit did not rely on Rule 133, as contended, inasmuch as *Leland Stanford* dealt with Section 12 only, and not Section 5.

In Sawyer v. Pioneer Mill Co., Ltd. (D.C.Haw., 1960), 190 F.Supp. 21, remanded on other grounds (9th Cir., 1963) 300 F.2d 200, the Court refused to enjoin under Section 10(b) the use of proxy material in connection with a proposed statutory reorganization, holding that it had no jurisdiction over the subject matter of the suit. While the Court did not detail its basis therefor, we can only assume that it relied on the *Leland Stanford* ruling as precedent.

Further, we find support for the position adopted today in Elfenbein v. Yaeger, (D.C.N.Y., 1964) CCH Fed. Sec. L. Rep. Par. 91,368, where, in a closely analogous situation, the Court held that no right arose under Section 10(b) to enjoin a merger, under which the corporation of which plaintiff was a shareholder would be forced to pay a premium to a director for its own stock by reason of a preliminary transaction consummated by said director. See also Borak v. J. I. Case, supra, wherein the Court of Appeals for this circuit affirmed the District Court, and held that "Section 10(b) of the Act has no application to the facts alleged in the complaint at bar." Plaintiff therein had sued to set aside a statutory merger, specifically alleging that proxy solicitation material used in ef-

fecting the merger contained false statements and material omissions. At the very least, the Court implied that Section 10(b) does not apply when Section 14(a) is applicable, and at the most, that a statutory merger does not involve a purchase or sale of securities under the former section.

Thus, we must conclude, as we did earlier, that this Court is without jurisdiction to proceed on the claim stated. We wish to emphasize, however, that we do not by our action deprive plaintiffs of a remedy. The acts complained of may properly be considered in a federal action based on Section 14(a) of the 1934 Act, as Count II herein, and/or in the absence of diverse citizenship of the parties, in a State Court proceeding for mismanagement, breach of fidicuary duty, corporate waste, and fraud. (Such an action has been filed in the Circuit Court of Cook County, Ill., 66 CH 2207.)

Accordingly, the motion of plaintiffs for reconsideration is denied, the foregoing memorandum to be treated hereinafter as a supplement to, and an integral part of the opinion issued by this Court on April 15, 1966.

In light of this decision, holding that the exchange of shares pursuant to a statutory merger is not subject to the fraudulent sale provisions of the Securities Act, there is no cause to permit filing of the Amended Count I offered by plaintiffs, which alters only the allegations of fraud. Plaintiffs' request for leave to file same· is accordingly denied.

In response to plaintiffs' letter of May 27, 1966, we might state, supplementally, that we did not intend to consider herein any argument raised by either side which in our opinion fell outside the narrow scope of the merger-sale question. We will, however, suggest, without entering into any formal reconsideration thereof, that plaintiffs have misconstrued the thrust of our earlier opinion. In that decision, we held that the only possible sale in issue, if one was present at all, took place at the time of merger, and accordingly directed our attention solely to misstatements or omissions which may have directly influenced consummation of that act. Thus, despite the early date of plaintiffs' complaint, we could not possibly disregard disclosures made by defendants to the shareholders via proxy statements after the complaint but before the merger. We held, upon consideration of the complaint, briefs, and additional documents filed therein, that plaintiff, as a matter of law, had not alleged sufficient facts, in light of the exhibits, to constitute fraud. It was further held, alternatively, that the proxy statements fully disclosed those matters which plaintiffs alleged formed the "crux" of their lawsuit, and which plaintiffs alleged were never revealed. This was not a factual question in view of the lack of controversy over the genuineness of the proxy statement and the date on which it was mailed. Whatever deficiencies said proxy statement may have had (a Section 14(a) question), they did disclose each and every material element which plaintiff complained was being secretly withheld. We are not concerned with the election of directors, but only with the material facts going to the approval of the merger itself. Thus, we granted defendants' motion to dismiss for failure to state a claim over which this Court could assert jurisdiction, or, more technically, granted summary judgment in favor of defendants, the Court having considered matters outside the scope of the original pleadings.