**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporation, Plaintiff,**

v.

**Robert C. FIELDING et al., Defendants.**

**Civ. No. LV-1222.**

United States District Court,
D. Nevada.

Nov. 25, 1969.

Alan J. Moscov, Gen. Counsel, Max Wilfand, Deputy Gen. Counsel, Washington, D. C., and Munger, Tolles, Hills & Rickershauser, Roderick M. Hills, Carla A. Hills and Alan V. Friedman, Frederick B. Warden, Jr., Los Angeles, Cal., and Milton W. Keefer, Las Vegas, Nev., for plaintiff.

Bell & Morris, Las Vegas, Nev., for defendant Lou F. La Porta.

Lloyd D. George, Las Vegas, Nev., for defendant William L. Taylor.

John J. McCune, Reno, Nev., for defendant Walter D. Bradley.

Ross, Snyder, Goodman & Bryan, Las Vegas, Nev., for defendant R. Guild Gray.

George E. Franklin, Jr., Las Vegas, Nev., for defendant Thomas Beam.

Singleton, DeLanoy, Jemison & Reid, Las Vegas, Nev., for defendants Nelson Conway, Kermit Moe, Clarence T. Hibbs, and Conway, Moe & Hibbs, a partnership.

William G. Simon and Thomas R. Sheridan of Simon, Sheridan, Murphy, Thornton & Medvene, Los Angeles, Cal., Clifford A. Jones, of Jones & Jones, Parraguirre, Rose, Pico & Norwood, Ltd., Las Vegas, Nev., for defendants.

## ORDER DENYING MOTIONS TO DISMISS

THOMPSON, District Judge.

This action is brought by Federal Savings and Loan Insurance Corporation (FSLIC) to enforce rights of action acquired by assignment from First Western Savings and Loan Association (Association).

The rights are asserted in five separately stated causes of action or claims for relief. Plaintiff first alleges a cause of action for damages for a conspiracy on the part of defendants who controlled First Western Financial Corporation to make the Association a wholly owned subsidiary of Financial and artificially to inflate the price of Financial stock by knowingly misrepresenting the true value of the Association through imprudent business manipulations and practices.

The second claim for relief seeks damages for the alleged negligence of certain defendants who allegedly owed a duty of care to the Association because of their status as controlling stockholders, directors or officers.

The third cause of action names two corporations, Nevada Bank of Commerce and American Savings and Loan Association, as defendants and seeks a judgment requiring these defendants to make restitution to plaintiff for assets of the Association which were allegedly unlawfully acquired by these defendants in fraudulent transactions manipulated by persons in the common control of both corporations.

The fourth cause of action asserts claims for relief under Section 10(b) of the Securities Exchange Act for the fraudulent manipulation of the stock market in connection with sales of the artificially inflated stock of Financial and for deceptive and manipulative practices in the solicitation and procurement of withdrawable accounts of the Association as an integral part of the overall conspiracy and scheme to manage the Association fraudulently and imprudently for the benefit and advantage of the stockholders of the parent corporation, First Western Financial Corporation.

Finally, there is a separately stated cause of action against the firm of certified public accountants retained by the Association, alleging negligence or wilful participation in the general conspiracy.

Defendants argue that plaintiff lacks capacity to sue. Plaintiff contends that it has inherent power to sue for damages to an insured, independent of assignment of claims, to fulfill its regulatory function and safeguard the federal treasury. It bases its argument on 12 U.S.C. § 1725, which confers upon the plaintiff the power to sue and be sued, and 12 U.S.C. § 1729(f), which allows plaintiff to lend, purchase assets of, or make contributions to an insured institution to prevent default.

The power to sue and be sued in itself does not create judisdiction. Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 85, 3 L.Ed. 38 (Marshall, C. J.):

"The plaintiffs contend, that the incorporating act confers this jurisdiction. That act creates the corporation, gives it a capacity to make contracts and to acquire property, and enables it 'to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever.' This power, if not incident to a corporation, is conferred by every incorporating act, and is not understood to enlarge the jurisdiction of any particular court, but to give a capacity to the corporation to appear as a corporation, in any court which would, by law, have cognizance of the cause, if brought by individuals. If jurisdiction is given by this clause to the federal courts, it is equally given to all

courts having original jurisdiction, and for all sums however small they may be."

Accord, Mullins v. First National Exchange Bank, 275 F.Supp. 712 (W.D.Va. 1967); Bankers Trust Co. v. Texas & Pac. RR Co., 241 U.S. 295, 36 S.Ct. 569, 60 L.Ed. 1010 (1916); C. Wright, Federal Courts 49 & n. 5 (1963); Harris v. American Legion, 162 F.Supp. 700, 710 (S.D.Ind.1958), aff'd, 261 F.2d 594.

█ The legislative history, the statutory provisions, and the nature of plaintiff's functional obligations and its administrative purpose all indicate unequivocally that plaintiff has no independent power to sue. It sues, if at all, insofar as injuries to an insured are concerned, only as an assignee or subrogee of its insured. It has no independent right not to be injured by fraud perpetrated upon its insured and therefore it cannot sue in tort under a law of the United States as intended by 28 U.S.C. § 1331.

The precise nature of the entities involved here must be carefully considered. The federal government is, in this case, attempting to regulate the relations of state citizens with a corporation created under a state charter. Thus, there are involved not only the interest in preserving the dual banking system in the United States but the interest in a proper balance in federal relations vis-a-vis the states. These interests have, in the proper context, constitutional significance. Hopkins Federal Savings & Loan Ass'n v. Cleary, 296 U.S. 315, 338, 56 S.Ct. 235, 80 L.Ed. 251 (1935) (Wisconsin could prohibit a state savings and loan association from converting itself into a federal association as federal law allowed it to do).

The Federal Home Loan Bank Act, H.R. 6021, signed May 28, 1935, 49 Stat. 293, 299, added 12 U.S.C. § 1729(f) to the National Housing Act and it is from this section that plaintiff gleans implied authority to sue here.

H.R. 6021 was submitted to the House on February 21, 1935. H.Rep. 202, 74th Cong. 1st Sess. noted at page 4:

"Section 21 of the bill amends section 406 of the National Housing Act by the addition of a new subsection (f) so as to permit the [plaintiff] to make loans to or purchase the assets of insured institutions in order to prevent a default or to restore an insured institution to normal operation."

The addition appears at page 10 of the report, as follows:

"(f) In order to prevent a default in an insured institution or in order to restore an insured institution in default to normal operation as an insured institution, the corporation is authorized in its discretion to make loans to, purchase the assets of, or make a contribution to an insured institution or an insured institution in default."

Plaintiff contends that a suit for damages for injury to its insured is allowed even though the enforcement section of the National Housing Act, now 12 U.S. C. § 1730, limits plaintiff to removal of officers, termination of insurance, cease and desist orders, or, under § 1729, liquidation.

Section 1730 remained the same from the date of the Act until 1966. It provided only for termination of insurance as an enforcement measure. The present section came into being on October 16, 1966, 80 Stat. 1036. The pertinent legislative history appears at 1966 U.S. Code Cong. & Admin. News 3532, 3538 & 3547. The Congressional reports repeatedly emphasized the importance of the division of regulatory power between the national and state governments. The purpose of the enforcement provisions is to quickly stop fraudulent practices, not to affirmatively recover for them.

Cases offered by plaintiff as dispositive on this issue of whether an independent right has been conferred by federal law are easily distinguished. Either they involve a federal savings and loan so that a federal right existed by reason of direct fraud on a federal corporation, there was a take-over by a federal agency pursuant to law or agreement, or there

was an assignment, and the opinion did not distinguish between jurisdiction under 28 U.S.C. § 1331 and special jurisdiction conferred as discussed *infra* for a suit by a federal corporation. Federal Savings and Loan Insurance Corporation v. Third National Bank, 153 F.2d 678 (6th Cir. 1946), cert. den. 329 U.S. 718, 67 S.Ct. 49, 91 L.Ed. 622 (assignment from federal savings and loan); United States v. LeMay, 322 F.2d 100 (5th Cir. 1963) (take-over); Mason v. Kavy, 134 F.Supp. 451 (E.D.N.Y. 1955) (take-over). Equitable jurisdiction must also be distinguished. While a federal agency may have an independent right at equity, Reich v. Webb, 336 F.2d 153 (9th Cir. 1964), cert. den. 380 U.S. 915, 85 S.Ct. 890, 13 L.Ed.2d 800; Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1959), equitable jurisdiction does not confer the right to hold another substantively liable. *Reich, supra*, 336 F.2d at 157: "Basically the holding stands for nothing more than a declaration that substantive liability cannot be created by the Bank Board apart from statute, a proposition with which we fully agree."

Nevertheless, plaintiff may properly maintain this action and does have capacity to sue under the provisions of 12 U.S.C. § 1730(k), as amended in 1966, and the assignment.

12 U.S.C. § 1730(k) states:

"Jurisdiction and enforcement

"(k) (1) Notwithstanding any other provision of law, (A) the Corporation shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28; (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: *Provided*, That any action, suit or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States. No attachment or execution shall be issued against the Corporation or its property before final judgment in any action, suit, or proceeding in any court of any State or of the United States or any territory, or any other court."

■ It is apparent that Congress intended that this Court would have jurisdiction in this action if plaintiff does not fall within the proviso limiting federal question jurisdiction. It does not. The plaintiff is not suing as the "conservator, receiver, or other legal custodian" of the insured state-chartered institution.

Plaintiff here first became involved, for the purposes of this case, with First Western Savings and Loan Association when it entered into an agreement dated June 21, 1961, to insure the withdrawable accounts of the Association. On December 19, 1966, because the Association had suffered financial reverses and the danger of a default was imminent, plaintiff entered into an assistance agreement pursuant to which plaintiff has loaned to the Association some $6,000,000. The assistance agreement provided certain procedures and requirements for the security of plaintiff, among them being the right to approve members of the Association Board of Directors. In September, 1968, for the further security of plaintiff, the Asso-

ciation executed an assignment to plaintiff.[1]

■■ Defendants argue that the assignment is invalid under Nevada law, citing Gruber v. Baker, 20 Nev. 453, 23 P. 858, 9 L.R.A. 302 (1890), for the proposition that a chose in action for fraud cannot be assigned. Whether Gruber v. Baker expresses the current Nevada law under the facts of this case is irrelevant because the validity of the assignment by the Association to plaintiff is controlled by federal, not by state, law. The federal right under 12 U.S.C. § 1729(f) to purchase assets of a state-chartered insured savings and loan company requires the application of federal law to determine the transferability of the assets. In FDIC v. Rectenwall, 97 F.Supp. 273 (N.D.Ind.1951), on facts and statutes for practical purposes indistinguishable from those here involved, the Court applied federal law and held tort claims assignable although state law would not allow it. An assignment to FDIC of a claim by a bank against an embezzler was upheld in Brown v. New York Life Ins. Co., 152 F.2d 246 (9th Cir. 1945). Federal courts must fashion federal law to further the purposes of the National Housing Act and to give effect to the regulatory scheme. United States v. View Crest Garden Apartments, Inc., 268 F.2d 380 (9th Cir. 1959). Cf. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It is reasonably necessary, it seems to us, that the powers granted FSLIC by the National Housing Act to insure withdrawable accounts, lend money to prevent insolvency and default, purchase assets of an insured institution and otherwise to protect the depositors and its own position as insurer be construed impliedly to support the acceptance of an assignment of assets to secure repayment of loans made. The assignment is valid. This Court has jurisdiction under 12 U.S.C. § 1730(k) (1) of the actions brought on claims validly assigned to plaintiff by the Association.

Finally, we must consider the more elusive problems presented by the fourth claim for relief. Here the defendants named in paragraph 10 of the Complaint are alleged to have violated Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 adopted by the Securities Exchange Commission in 1942, 17 CFR § 240.10b–5, which proscribe fraud and deception in connection with the purchase or sale of a security by use of instrumentalities of interstate commerce or of the mails.

Incontestibly, this Court has subject matter jurisdiction of such a claim for relief. Section 78aa, Title 15, United States Code, provides:

"The district courts of the United States, and the United States courts of any Territory or. other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and

---

1. The assignment transferred:
"[A]ny and all claims [the Association] may possess against any officers, employees, or directors of the Association or of First Western Financial Corporation ('Financial'). Financial, any shareholders of Financial, any persons or parties acting as consultants or advisors to the Association or Financial and any other persons or parties acting with or on behalf of the foregoing that arise out of transactions occurring prior to December 1, 1966, including all such claims encompassed in Case No. A–43922 [now pending in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark] and all such claims arising by reason of transactions by persons or parties in the stock of Financial."

regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. * * *."

· The issue is whether an actionable claim has been stated in favor of plaintiff or plaintiff's assignor. In summary, the Complaint charges that the paragraph ten defendants conspired fraudulently to inflate the value of First Western Financial Corporation stock (of which they own 81%) by regularly and intentionally overstating the income, assets and concealing liabilities of the Association (its wholly owned subsidiary) by the use of the mails, statements filed with the Securities Exchange Commission and proxy statements sent to shareholders and unjustly enriched themselves by sales of their personally owned Financial stock, the price of which had been so fraudulently and artificially inflated. The Complaint also charges like deceptive statements in mailings to Association's depositors and prospective depositors, inducing the fraudulent procurement of withdrawable deposit accounts. Plaintiff claims the withdrawable accounts, evidenced by deposit books or investment certificates, to be "securities" within the Securities Exchange Act.

■ With respect to the sales of Financial stock by the paragraph ten defendants, it is apparent that the Complaint cannot sustain a judgment for damages at law for tortious misconduct in violation of Rule 10b–5. The cases have quite uniformly held that the plaintiff must be either a buyer or seller who has been deceived to his detriment by one who bought from or sold to him. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir. 1952); Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2nd Cir. 1967). Plaintiff and plaintiff's assignor were not buyers or sellers of Financial stock.

We cannot, however, ignore the broad statutory grant of equitable jurisdiction to the district courts to secure compliance with the regulations. This has been relied upon to justify relief in many cases where the plaintiff was neither a buyer nor a seller. Ruckle v. Roto American Corp., 339 F.2d 24 (2nd Cir. 1964); Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2nd Cir. 1967); Mutual Shares v. Genesco, Inc., supra. In discussing a similarly unrestricted grant of equitable jurisdiction under the Fair Labor Standards Act, the Supreme Court has said (Mitchell v. Robert DeMario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960)):

"We initially consider § 17 apart from the effect of its proviso, which was added in 1949. The court below took as the touchstone for decision the principle that to be upheld the jurisdiction here contested 'must be expressly conferred by an act of Congress or be necessarily implied from a congressional enactment.' 260 F.2d (929), at 933. In this the court was mistaken. The proper criterion is that laid down in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332. This Court there dealt with an action brought by the Price Administrator under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925, to enjoin the collection of excessive rents and to require the landlord to reimburse its tenants for moneys paid as a result of past violations. We upheld the implied power to order reimbursement, in language of the greatest relevance here:

" 'Thus the Administrator invoked the jurisdiction of the District Court to enjoin acts and practices made illegal by the Act and to enforce compliance with the Act. Such a jurisdiction is an equitable one. Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and com-

plete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. \* \* \* [T]he court may go beyond the matters immediately underlying its equitable jurisdiction \* \* \* and give whatever other relief may be necessary under the circumstances. \* \*

" 'Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." Brown v. Swann, 10 Pet. 497, 503, 9 L.Ed. 508. \* \* \*' 328 U.S., at 397–398, 66 S.Ct. at page 1089."

█ In the *Mitchell* case, the Court authorized mandatory injunctive relief to provide restitution of lost wages unjustly retained by defendants. It may be suggested that enforcement of the Securities Exchange Act, like the Fair Labor Standards Act, purposes to vindicate public rather than private rights even though private restitution is the remedy employed. Wirtz v. Malthor, 391 F.2d 1 (9th Cir. 1968); Wirtz v. Milton J. Wershow Co., 416 F.2d 1071, 9th Cir. 1969.

Analogously, in Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), the theory of unjust enrichment was applied to require a defrauding buyer of stock in violation of Rule 10b–5 to disgorge his profits to the seller which might be greatly in excess of the seller's actual damages and this despite a statutory prohibition of a recovery in excess of actual damages. 15 U.S.C. § 78bb. Cf. Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967). Thus, the broad reach of equitable relief under the Securities Exchange Act was recognized.

The fraud and deception in the sale of securities had concomitantly a direct impact on the Association through the alleged over-solicitation of withdrawable accounts and imprudent investment of surplus funds (direct damage being suffered by excessive interest obligations to depositors and losses from bad loans and over-valued securities) and a direct benefit to the paragraph ten defendants who gained in the inflated sales price of Financial stock resulting from use of the over-stated financial health of the Association. Accepting as well-reasoned and sound the distinction made in Superintendent of Insurance of State of New York v. Bankers Life & Casualty Co., 300 F.Supp. 1083 (S.D.N.Y.1969), between the employment of fraud in connection with a security transaction and the effectuation of a security transaction in connection with a fraudulent activity, we think the allegations of the Complaint cast the transactions in both categories and thus allege a "federal fraud", that is to say, that the Association was damaged by fraud and deception employed in connection with the purchase and sale of the capital stock of Financial. Inasmuch as the damage to the Association was allegedly one intended consequence of the entire scheme, as was the unjust enrichment of defendants, proximate cause is not difficult to find. The Court, in the *Bankers Life* case, *supra*, had occasion to describe the characteristics of a "federal fraud" under the Securities Exchange Act in the following way:

"The securities acts, and especially the 1934 Act, were intended to prevent fraud and deception, manipulation and inadequate disclosure in the dissemination and trading of securities. The securities acts are not so much concerned with fraud per se as with the effect of fraud upon investors and the public interest in maintaining free and open securities markets. 1934 Act § 2(3), 15 U.S.C. § 78b(3); Schoenbaum v. Firstbrook, 405 F.2d 200, 212 (2d Cir.), rev'd en banc, 405 F.2d 215 (2d Cir. 1968); S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833, 858–860

(2d Cir., en banc, 1968) ; cf. A. T. Brod & Co. v. Perlow, supra.

"In order to sustain a complaint alleging fraud under section 10(b) of the 1934 Act, it must appear with reasonable clarity from the face of the complaint either (1) that a purchase or sale of securities is at the crux of a fraudulent scheme; or (2) that inducing a purchase or sale of securities is the object of a fraudulent scheme; or (3) that fraudulent statements, misstatements, or omissions are made in a manner which is reasonably calculated to influence the investing public, or are of the sort which the reasonable investing public might rely upon; or (4) that the trading process is abused through potential market manipulation or the spread of watered stock.

"The purity of the security transaction and the purity of the trading process are the sole objectives of federal concern. Therefore, the consummation of a security transaction as a mere incident of a fraudulent scheme and the mere fact of injury caused by the fraud, in the absence of any possibility that the fraud might materially affect the purity of the security transaction and the purity of the trading process would not make the fraud federally cognizable. Cf. O'Neill v. Maytag, 230 F.Supp. 235, 239 (S.D.N.Y.), aff'd, 339 F.2d 764 (2d Cir. 1964)."

The fraud alleged in this Complaint carries all the earmarks and brands suggested. Cf. A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2nd Cir. 1967) ; Carroll v. First National Bank of Lincolnwood, 413 F.2d 353 (7th Cir. 1969).

This is a complicated case which is in its initial pleading stages. We are deciding only a question of the Court's jurisdiction to entertain the claim of alleged fraudulent and deceptive practices in violation of the Securities Exchange Act. Neither plaintiff nor its assignor was a defrauded buyer or seller and under the precedents cited to the Court, neither may sue for damages. But a party need not be a buyer or seller to have standing to sue for equitable relief and mandated restitution is a possible form of relief under the case made by the Complaint. The possibility may be remote, but this is of no concern when the attack is on the jurisdiction of the Court. "In these circumstances, there is no reason to emasculate the securities laws by forbidding remedies which might prove to be essential." SEC v. National Securities, Inc., 393 U.S. 453, 463, 89 S.Ct. 564, 570, 21 L.Ed.2d 668 (1969).

We do not reject, but do not consider, plaintiff's further contention that fraud in the solicitation of the withdrawable accounts alone vests jurisdiction under the Securities Exchange Act inasmuch as the accounts are "securities." See Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

It hereby is ordered that the motions to dismiss be, and they hereby are, denied and each defendant is granted twenty (20) days from date in which to serve and file an answer to the Complaint.