**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, a corporation, Plaintiff,**

**v.**

**Robert C. FIELDING et al., Defendants.**

**Civ. No. LV–1222.**

United States District Court,
D. Nevada.

May 10, 1972.

---

2.  At least no appellate court decision to this effect has been called to our attention and we have found none.

Alan J. Moscov, Gen. Counsel, Max Wilfand, Deputy Gen. Counsel, Washington, D. C., Munger, Tolles, Hills & Rickershauser, Los Angeles, Cal., Milton W. Keefer, Las Vegas, Nev., for plaintiff.

Thomas R. Sheridan, Los Angeles, Cal., George E. Franklin, Jr., Ross, Snyder, Goodman & Bryan, Bell & Morris, Lloyd D. George, Samuel S. Lionel, Singleton, DeLanoy, Jemison & Reid, Las Vegas, Nev., Guild, Hagen & Clark, John J. McCune, Reno, Nev., Jones, Jones, Close, Bilbray & Kaufman, Austin & Thorndal, Las Vegas, Nev., for defendants.

## ORDER DENYING MOTION TO SUPPRESS AND RELATED MOTIONS

BRUCE R. THOMPSON, District Judge.

The twenty principal individual defendants in this action, by motions to suppress, for an injunction and objections to interrogatories and to requests for production of documents, seek to terminate this litigation by asserting the lawyer-client privilege and the policies prohibiting conflicts of interest. The general character of the lawsuit has been described in earlier opinions. Federal Savings and Loan Insurance Corporation v. Fielding, 309 F.Supp. 1146 (D. C.Nev.1969); Federal Savings and Loan Insurance Corporation v. Fielding, 316 F.Supp. 82 (D.C.Nev.1970).

Extensive discovery has been conducted and there is little dispute in the facts bearing upon the merits of the instant motions.

The twenty defendants are former officers, directors and employees of First Western Financial Corporation (FWFC) and First Western Savings and Loan Association (FWSLA). The plaintiff, Federal Savings and Loan Insurance Corporation (FSLIC), prosecutes this action against defendant in part on the basis of an assignment from FWSLA of certain claims in an earlier filed Nevada State case, A–43922, which is substantially the same litigation as the case at bar.

FWSLA is a wholly owned subsidiary of FWFC, and the genesis of that corporate control can be traced to 1959 where, in a series of complex corporate transactions, certain of the defendants herein, Messrs. Fielding, Landa, Jones, and Albert G. Neumeyer, Deceased, effected FWFC's stock ownership of FWSLA. In these transactions, Landa, a partner in the law firm of Davies, Richberg, Tydings, Landa & Duff (hereinafter the "Davies" firm), and Fielding, a client of the Davies firm, acted on behalf of themselves and a group of investors with the legal counsel and assistance of the Davies firm. Members of the firm, including Delmar W. Holloman, also a defendant herein, and George D. Webster, represented Fielding and Landa personally in these transactions, which resulted in these individuals becoming substantial stockholders and part of management in FWFC.

During the ensuing years, both FWFC and FWSLA had complicated financial, tax, corporate, stock and management transactions. The Davies firm, including Landa, Holloman and Webster and subsequently Brebbia, was directly involved as legal counsel in these transactions. The Davies firm also represented many of the principals of FWFC and FWSLA in their personal capacities. In addition, certain defendants in this ac-

tion, Landa, Fielding, Neumeyer, Holloman and Clifford Jones, received personal counsel and advice with respect to their official acts as members of management of FWFC and FWSLA.

From 1960 through December of 1965, Holloman, as a partner of the Davies firm, was general counsel to FWFC. During these years, Holloman, Webster and Landa performed many legal services for FWFC and FWSLA, such as negotiations and representations before the Securities and Exchange Commission, the Federal Home Loan Bank Board, the New York Stock Exchange, the Internal Revenue Service, and plaintiff in this action, FSLIC. The relationship between the Davies firm and the management of the two corporations is further highlighted by the fact that not only did Holloman serve as general counsel for FWFC, but Landa was a director of the corporation, and, from the beginning, Webster was assistant secretary.

In 1965, John Henry Brebbia became an associate in the Davies firm. Upon his association with the firm, he assisted Holloman and Webster in representing FWFC and FWSLA. In June of 1966, Mr. Webster, who had already become general counsel, succeeded Landa as a director of FWFC; thereafter, in December of 1966, Webster was elected Chairman of the Board, and, by amendment to the by-laws, Chief Executive Officer. At the same time, Brebbia became a member of the Board of Directors and subsequently the President of FWFC. At the time, Webster and Brebbia were still partner and associate, respectively, in the Davies firm.

On December 19, 1966, FWSLA entered into a formal assistance agreement with FSLIC. This assistance agreement was negotiated for several months beforehand by Webster and Brebbia on behalf of FWSLA and its then management, the defendants in this action.

The complaint in A–43922, the action filed in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, the predecessor of the case at bar, was drafted, signed and filed by John Henry Brebbia and verified by George D. Webster in May of 1967. A few weeks prior to the filing, Webster and Brebbia had withdrawn from the Davies firm and had immediately associated with the firm of Alston, Miller & Gaines, of Atlanta, Georgia. Upon association with the Alston firm, Webster and Brebbia became that firm's Washington, D. C. office. On the night of March 31, 1967, when Webster and Brebbia resigned from the Davies firm, they removed the Davies files and records dealing with FWFC and FWSLA. Subsequently, the Davies files were used by Webster and Brebbia in the litigation of A–43922.

In addition to instituting A–43922, Webster and Brebbia also in May of 1967, caused to be filed a Delaware action against Messrs. Neumeyer and Jones. Webster personally verified the Complaint in the Delaware action.

With respect to the Davies files, their specific whereabouts remained unknown to defendants until Mr. Peter Taft, trial counsel for FSLIC in the present litigation, informed the Court and defendants' counsel that he and his law firm presently had the files and were utilizing them in trial preparation.

Albert G. Neumeyer, Deceased, was, in 1958, President and Managing Officer of First Western Savings and Loan Association. The FWFC–FWSLA corporate structure was formed by negotiations between two groups—that headed by Neumeyer and the Fielding-Landa group. Leonard Silverstein, attorney for Neumeyer, assisted Neumeyer in the establishment of FWFC; subsequently Silverstein entered into negotiations for refinancing with Fielding and Landa. The Davies firm therefore represented Landa and Fielding, vis-a-vis Silverstein, in the development of FWFC.

As an officer of FWFC, Webster performed the duties of an assistant secretary for a period of five years. In this capacity, he has stated that his eyes were open to what he did and what he was called upon to do. In his capacity

as a partner in the Davies firm and as an officer of FWFC, Webster handled many matters on behalf of the corporation with various governmental agencies, including the Securities and Exchange Commission, Federal Home Loan Bank Board, New York Stock Exchange and Internal Revenue Service.

In 1963, during the acquisition of the Nevada Bank of Commerce, a defendant in this action, by FWFC, Webster rendered advice on the tax aspects of the acquisition.

During the registration of FWFC stock with the Securities and Exchange Commission in 1963, Webster rendered various opinions on taxation and he was listed under the various preliminary prospectuses and the final prospectus as an officer of the company and a member of the Davies firm.

In addition, Webster held power of attorney for various stockholders in the transactions before the Securities and Exchange Commission. In correspondence between FWFC and the Securities and Exchange Commission, as well as underwriters and the New York Stock Exchange, Webster was designated as a member of the corporation's management, and as such, he was capable of answering inquiries as to various matters.

FWFC, as a holding company, had also acquired First Bancorporation, and when First Bancorporation was spun off by FWFC, Webster dealt with the tax aspects of that spin-off and obtained a ruling from the Internal Revenue Service in that regard.

In 1965, Webster's legal work also included advising the management of FWSLA on foreclosure problems. His work also brought Webster into negotiations with the Federal Home Loan Bank Board. He corresponded with officers of the Bank Board relative to credit requirements and worked on behalf of FWFC with respect to the Home Loan Bank Board's requirements concerning the profits to be taken through foreclosures.

In his work with the Davies firm, Webster also included Nevada banking law as well as federal banking law in his counseling and representation. Moreover, Webster advised management on the provisions of Section 16(b) of the Securities and Exchange Act, as well as on selling their privately held FWFC stock. Webster also advised management on proxy material.

Webster also advised the officers and directors of FWFC and FWSLA on the savings and loan regulations and he worked with officers of the Treasury Department relative to these regulations.

As counsel for FWFC and its subsidiaries, Webster rendered opinions on the issuance of stock dividends under the Securities Act of 1933. He also worked with the accounting firm of Conway, Moe & Hibbs and with Nelson Conway of that firm, defendants in this lawsuit. Nelson Conway sought and received the legal advice of Webster with respect to accounting questions. In the area of accounting methods and their effect upon the earnings and taxes of the corporations, Webster's work further included the reporting requirements of various governmental agencies.

As a partner in the Davies firm, Webster kept the management apprised of the Federal Reserve regulations. Furthermore, Webster advised management on the federal income tax aspects of the Nevada Bank of Commerce stock which was held by FWFC.

John Henry Brebbia was hired by the Davies firm as an associate and began working in that capacity on January 5, 1965. At the Davies firm, Brebbia worked on various matters, including anti-trust, trade association, general corporate practice and Federal Home Loan Bank Board work. Much of his time was spent with Delmar W. Holloman on the representation of FWFC.

The legal work done by the Davies firm for First Bancorporation was primarily done by Brebbia in association with Henry Heyman, the secretary of FWFC. During the years 1967 through 1968, Brebbia did an extensive amount of legal work for FWSLA. He also assisted Holloman on registration state-

ments for First Bancorporation for the Securities and Exchange Commission.

Brebbia's representation of FWFC, FWSLA and the defendants herein included meetings with the Federal Home Loan Bank Board relative to accounting procedures, which have been placed in issue by the present complaint of FSLIC.

When negotiations began between FWSLA and FSLIC as to an assistance agreement, Brebbia began to devote a substantial amount of his time to this problem. In fact, Brebbia was the chief liaison between FSLIC and the defendants, and as such, his contacts at this stage included attorneys for the Home Loan Bank Board and FSLIC.

In 1966, due to the many suggestions made by the Federal Home Loan Bank Board, the Davies firm requested an outside legal opinion as to the consequences of these suggestions. The requested legal opinion was directed, in part, to the possible liability of the officers and directors of the corporations. This opinion was ultimately rendered by the Pittsburgh firm of Reed, Smith, Shaw & McClay. Brebbia participated in this opinion with the attorneys at the Reed, Smith firm, as did Holloman and Webster.

In his work before the Home Loan Bank Board, Brebbia met several times with the Board's officials and many of the defendants in this action, including Fielding. In his representation of the defendants, Brebbia assisted in drafting correspondence on their behalf to FSLIC.

Brebbia and Webster, as counsel, held strategy meetings with the defendants to discuss the negotiations between FWSLA and FSLIC. Brebbia, like Webster, appeared on behalf of the corporation before the Securities and Exchange Commission.

After Webster and Brebbia had become members of the Board of FWFC, but while they were still working with the Davies firm, the Board of Directors decided to retain counsel in Los Angeles to look into the loan situation of FWSLA. The Board retained a Los Angeles firm to conduct an investigation. During this period of time, on March 10, 1967, the Board received a letter from Mr. Jerry Worthy, counsel for the Home Loan Bank Board, relative to investigating the savings and loan situation and taking any legal action deemed warranted.

The Los Angeles law firm subsequently withdrew from the investigation because of the possibility of conflict of interest. However, the Board of FWSLA continued its investigation, utilizing the services of Mr. Brebbia. After the investigation, Brebbia, still an associate in the Davies firm, advised the Board of the possibility of litigation.

When Webster and Brebbia left the Davies firm and began practicing in the Washington, D. C. office of Alston, Miller & Gaines, Brebbia was working on the complaint of the forerunner of this lawsuit, A-43922.

The facts have been rather extensively summarized in order to bring into focus the strength of defendants' arguments that the interrelationships of the respective parties have been so extensive, personal and confidential over the years that public policy prohibits Webster and Brebbia from participating in this litigation in support of FSLIC's complaint and prohibits the use in aid of this litigation of the FWFC and FWSLA files taken from the Davies firm.

Plaintiff has argued its opposition to defendants' contentions with primary emphasis upon the attorney-client privilege. A written waiver of the privilege, executed on behalf of FWFC and FWSLA, has been filed. By contrast defendants emphasize that the evidentiary privilege and ethical constraints against disclosure of confidences arising from an attorney-client relationship have little directly to do with the problem. The thrust of defendants' arguments is that under these circumstances, it is against public policy to permit law-

yers, Webster and Brebbia, to occupy a position as leaders in the litigation against these defendants in conflict with the interests they had had and accepted as the confidential legal advisors of these corporations and the officers and directors acting on behalf of the corporations.

While the sanctions and restrictions arising from an attorney-client relationship have been the subject of considerable judicial and professional consideration, no precedent has been cited in the extensive briefs of counsel, and we have found none, which is much like this case.

The decision relied on by defendants as most pertinent is Doe v. A Corp., 330 F.Supp. 1352 (S.D.N.Y.1971), where Doe, an attorney associated with X law firm in the representation of defendant corporations, upon termination of the relationship, brought a derivative stockholders action (he had purchased a share of the stock of defendant A Corp.) charging the individual defendants, officers and directors of defendant corporations with fraud, breach of fiduciary duty and violations of the federal securities laws. Plaintiff Doe had acquired the information upon which the complaint was predicated in the course of the attorney-client relationship. Relying upon Canon 4 of the Code of Professional Responsibility of the American Bar Association and the precedents emanating therefrom, the Court held that where "any substantial relationship" can be shown between a lawyer's former representation and subsequent litigation in which the lawyer is involved, his participation in the latter will be prohibited. The case is different from others only because the lawyer was the plaintiff. He had, however, acquired only a technical qualification to sue by purchasing a share of stock; he had no genuine interest as a stockholder of the corporation.

The principle relied upon by the New York Court is not novel, and finds substantial concurrence in the Ninth Circuit. For example, in Cord v. Smith, 338 F.2d 516 (9th Cir. 1964), Young, who had been Cord's personal attorney in transactions with Smith which were the subject matter of the later litigation, was peremptorily disqualified from representing Smith in the litigation.[1]

1. "In our opinion, the rule that an attorney who has represented one party in a transaction may not thereafter represent the other party in an action against his former client, arising out of or closely relating to the transaction, does not depend for its operation upon a subsidiary decision as to whether the attorney would or might be using or misusing confidential information derived from his former client. We think that the famous words of Judge Cardozo in Meinhard v. Salmon, 1928, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1, in which he was defining the duties of a trustee, are equally applicable to an attorney-at-law in relation to his conduct in the federal courts: 'Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.'

"Practical as well as theoretical considerations point to the result that we reach. It may be that an attorney will be the only person whose knowledge, disclosed upon the witness stand, can give the court the information that it must have if it is to decide a particular case correctly. Like all privileges, the attorney-client privilege may, in a particular case, be a clog upon the proper administration of justice. For that reason, a court may be astute to find a waiver, or otherwise to narrow the claim of privilege. No such problem exists when an attorney is disqualified from representing a client in a particular case. We have no doubt that Smith can find many competent lawyers to represent him among the more than 25,000 members of the State Bar of California." Cord v. Smith, 338 F.2d 516 (9th Cir. 1964).

■ The *Cord* case involved a personal as distinguished from a corporate attorney-client relationship. It is, nevertheless, clear that the same public policy predicated upon the Canons of Ethics is applicable in the case of a corporate client. Chugach Elec. Ass'n v. United States D. C. for District of Alaska, 370 F.2d 441 (9th Cir. 1966).

More complicated inter-corporate and attorney-client relationships were involved in E. F. Hutton & Company v. Brown, 305 F.Supp. 371 (S.D.Tex.1969), in which the Court disqualified a Houston law firm and a New York law firm from representing plaintiff corporation in an action for negligence and breach of fiduciary duty against its former regional vice-president, the latter having been represented by these lawyers in bankruptcy and SEC hearings pertaining to the subject matter of the litigation. With reference to the instant case, this decision is noteworthy for its holdings (1) that the New York law firm, general counsel for plaintiff corporation but not counsel of record in the action, was disqualified from representing plaintiff and from aiding, consulting or advising new counsel; (2) that the complained of attorneys, the Houston law firm and the New York law firm, had represented plaintiff and defendant jointly in the SEC and bankruptcy hearings and were disqualified from representing either in the litigation between them; and (3) that there was no impediment present with respect to confidential communications because defendant had obtained his knowledge within the scope of his position as regional vice-president of plaintiff corporation and his official knowledge was in law knowledge of the corporation.

The foregoing are primary precedents upon which defendants rely for support of their argument that the maintenance of this litigation is so meretriciously dependent upon breaches of confidence and violations of conflict of interest principles on the part of Webster and Brebbia that sound public policy requires the suppression of any evidence stemming from the knowledge of Webster and Brebbia as attorneys for the corporation. Doe v. A Corp., *supra*. We do not agree.

Many of the principals in this litigation occupied dual roles. Defendant Landa, a member of the Davies firm, was a director of FWFC from its inception until June of 1966. Webster, since December, 1966 the Chairman of the Board of FWFC and a director since June, 1966, succeeding Landa, was assistant secretary from the beginning and a member of the corporation's management. He was also a member of the Davies firm until his severance therefrom on March 31, 1967. Brebbia was an associate of the Davies firm and became a director and president of FWFC in December, 1966. He, too, severed his relationship with the Davies firm in March, 1967.

■ Unquestionably, corporate officers and directors owe a fiduciary duty of utmost confidence and trust to the corporation and its stockholders. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); 19 Am.Jur.2d, Sec. 1271; 2, p. 677 et seq.

■ The knowledge of a corporate director and officer, at least with respect to transactions in which he is authorized to act, is imputed to the corporation. 19 Am.Jur.2d, p. 669 et seq.

■ Similarly, the knowledge of a partner of a law firm gained during confidential relationships with clients is imputed to the other partners and each member of the partnership is equally constrained by the evidentiary privilege and the ethical precept of non-disclosure as well as the Canons interdicting conflicts of interest. See, 73 Yale Law Journal 1058 and authorities cited.

In the circumstances of this case, it is impossible to conclude that any of the communications between officers and directors of FWFC and FWSLA and members and associates of the Davies law firm were intended to be confidential or that a lawyer-client relationship in the professional sense existed. Landa, as a

director, and Webster, as an officer and admittedly part of the corporate management while partners in the Davies firm, created a situation in which, from one point of view, the corporation represented itself as its own counsel. When dealing with the corporation's business, the policy of the law imposing exacting fiduciary duties and responsibilities upon the corporation's officers and directors must override the assertion of confidentiality and privilege in reliance on the fact that the individuals also happen to be lawyers.

In a sense, our situation is similar to that in which a corporation employs house counsel. The Courts have rather uniformly held that the mere facts that an attorney is compensated by salary rather than fees and limits himself to one client in preference to several are not destructive of an attorney-client relationship. None of the cases involved a situation where the attorney was also a part of the corporation's top management and the issue in each of them was only one of evidentiary privilege, not of disqualification because of conflicts of interest. See, United States v. United Shoe Machinery Corporation, 89 F.Supp. 357 (D.C.Mass.1950); Paper Converting Machine Co. v. FMC Corp., 215 F.Supp. 249 (E.D.Wis.1963); Georgia Pacific Plywood Co. v. United States Plywood Corp., 18 F.R.D. 463 (S.D.N.Y.1956); New York Underwriters Insurance Co. v. Union Construction Co., 285 F.Supp. 868 (D.C.Kan.1968); Malco Manufacturing Company v. Elco Corporation, 45 F.R.D. 241 (D.C.Minn.1968). See, "The Lawyer-Client Privilege: Its Application to Corporations, the Role of Ethics, and its Possible Curtailment," 56 Northwestern University Law Review 235, in which the author observed:

"Some courts have expressed doubt that the privilege should apply at all where house counsel are involved. Indeed, it might seem that no incentive to full disclosure should be needed when the attorney is himself an officer of the corporation."

Presumably, the many courts which have recognized an evidentiary privilege with respect to house counsel who have maintained a purely professional attorney-client relationship with the corporate employer, would also quite properly apply the conflicts of interest Canons to disqualify a lawyer thereafter entering private practice from representing interests adverse to his former employer if the subject matter of the conflict had arisen during his employment.

Early in the consideration of lawyer relationships with corporate clients, Judge Campbell reached the conclusion that there was no lawyer-client privilege with respect to corporate clients. Radiant Burners, Inc. v. American Gas Assoc., 207 F.Supp. 771 (N.D.Ill.1962). Inasmuch as the rule disqualifying an attorney from representing a conflicting interest, like that precluding the disclosure of a confidential communication, is predicated upon a public policy encouraging maximum disclosure of all relevant facts to the lawyer with assurance that the information would never be disclosed or used adversely without the client's permission, Judge Campbell's conclusion would have done much to simplify the conflict of interest problems as well. His solution of the multifarious problems which he foresaw if an attorney-corporate client privilege should be recognized was short-lived. The decision was reversed on appeal. Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314 (7th Cir. 1963). And recognition of the privilege is now universal. See, "Attorney-Client Privilege for Corporate Clients: The Control Group Test", 84 Harvard Law Review 424; "The Lawyer-Client Privilege: Its Application to Corporations, the Role of Ethics, and its Possible Curtailment," 56 Northwestern University Law Review 235; "Unchanging Rules in Changing Times, The Canons of Ethics and Intra-Firm Conflicts of Interest," 73 Yale Law Journal 1058.

There is, nevertheless, a growing tendency to adopt a narrow and limited

application of the attorney-client relationship with respect to corporate clients. The "control group" test has gained considerable acceptance. 84 Harvard Law Review 424; Annotation, 98 A.L.R.2d 241; Annotation, 9 A.L.R. Fed. 685. But see, Harper & Row Publishers v. Decker, 423 F.2d 487, affirmed per curiam by an equally divided court, 400 U.S. 348. The attorney-client privilege is a tenuous one, at best, with multifarious exceptions and conditions upon its applicability. Inasmuch as its enforcement impedes the search for truth, we think it may be stated with assurance, as a general principle, that the ethical and evidential strictures are brought into play only when a professional confidential relationship in its purest sense has been established. The attorneys selected by a client must, from one point of view, be dealing at arm's length with the client, as independent legal advisors, bearing in mind, of course, the fiduciary nature of the relationship.

██ The relationship must be one which supports the reason for the ethical and evidentiary sanctions, that is, the public policy promoting full disclosure in the interests of obtaining sound and well-considered legal advice. When the attorney and the client get in bed together as business partners, their relationship is a business relationship, not a professional one, and their confidences are business confidences unprotected by a professional privilege.

██ In the instant case, Landa and Webster were part of the control group of FWFC and FWSLA. They were also partners in the Davies law firm. Public policy imposing upon them fiduciary obligations of trust and confidence vis-a-vis the corporations and their stockholders prevails over the weaker precepts arising from the claimed attorney-client relationship.[2]

The difficulties inherent in this type of problem are illustrated by the lengthy opinions (like this one) rationalizing a result in a particular case, for example, Marco v. Dulles, 169 F.Supp. 622 (S.D. N.Y.1959). In that case, the prestigious New York law firm of Sullivan & Cromwell had represented a corporation and its directors. One of the directors was senior partner of the law firm. When disqualification of the firm from representing the directors individually as defendants in a derivative action was sought, the firm argued (169 F.Supp. at 628):

"Messrs. Sullivan & Cromwell take the position that in view of the unique relationship between a corporation and its directors there can be no secrets or confidences reposed in them by the corporation which they are obligated not to divulge to the directors whom they thereafter may represent.

"Their argument runs like this.—A corporation is an inanimate legal entity which can act only through and by its directors and officers. Any secrets or confidences reposed by the corporation in its general counsel are necessarily known to all of the directors since they are the only vehicles through which the corporation could have known of or expressed such confidences. Conversely, any confidences which the directors reposed in the general counsel to the corporation must have been fully known to the corporation since the directors constitute the voice and hearing of the corporation, and, indeed, its only voice and hearing. Thus there can be no secrets or confidences reposed in general counsel by the corporation which are not fully known to its directors, nor any secrets or confidences reposed by the directors which are not fully known to the corporation. From this, it is argued that the representation of the directors in this suit could not possibly involve any breach of the professional obligation not to divulge any secrets or confidences of the corporation by a firm which acted as counsel for both the corporation and its direc-

2. Contrast: In Re Pioneer Oil & Gas Co., 333 F.Supp. 1055 (E.D.La.1971).

tors because no such secrets or confidences exist."

This argument, reminiscent of Judge Campbell's thoughtful conclusion in the *Radiant Burners* case, *supra,* was rejected by the Court, which said:

"This argument does not seem to me to be valid. A corporation is a continuing entity. Boards of Directors come and go but the corporation persists. One board of directors may conceive the interests of a corporation to be quite different from a prior board. Nevertheless the professional obligation of former general counsel to the corporation persists. Its loyalty is not to the former directors alone but to the continuing corporate entity as well.

"The corporation has its own files and records which it maintains continuously. While a board of directors in office has access to such files and records it by no means can be assumed that the directors know everything in the files and records of the corporation, or if they did that they retained such knowledge. There may well be secrets and confidences in the files of counsel which are in fact wholly unknown to the former directors."

It is noted that the law firm, in formulating its argument, avoided mentioning the dual position occupied by its senior partner. The Court, however, arriving at the point of stating reasons why the firm need not be disqualified, opined (169 F.Supp. at 631):

"The attempt to set aside these transactions upon the ground of fraud necessarily implies an accusation by the plaintiff not only against the directors who were clients of Messrs. Sullivan & Cromwell, but against Messrs. Sullivan & Cromwell themselves in their professional capacity as the lawyers in these transactions. Moreover, these accusations are direct as well as implied. The then senior partner of Sullivan & Cromwell is named as a defendant in the action and is alleged to have been a participant in the frauds charged. It is true that he is not expressly charged with fraud in his professional capacity. *But his acts as a director cannot be separated from his acts as a member of the firm who were general counsel for the corporation. The line between the two is entirely too fine to permit the professional obligation as a lawyer and the fiduciary obligation as a director to be placed in convenient separate boxes."* (Emphasis supplied.)

With this latter conclusion, we find ourselves in wholehearted agreement. The *Marco* case, however, is not on all fours with our situation. There the new corporate management was entirely separate and distinct from the old management whom Sullivan & Cromwell continued to represent. In our case, the new top executives of FWFC and FWSLA, Webster and Brebbia, are part of the old management and are former partners and associates of the Davies firm which was general counsel for the corporations. Also, Webster and Brebbia, nominally at least, are not representing anyone as attorneys. Their disqualification is sought from any participation in the case as the Chairman of the Board, the President, and as Directors of the corporate principals. The disqualification arm of the Court is not that long. If Webster and Brebbia have violated canons of professional ethics by accepting employment as corporate executive officers, we must leave the matter within the province of the disciplinary committees of the bar associations having authority in the premises.

■ The restrictions resulting from enforcement of the Canons of Professional Ethics respecting the confidentiality of the lawyer-client relationship and the avoidance of conflicts of interest are interwoven. As we have seen, they stem from the same public policy. For the purposes of this case, it is sufficient to conclude that when a corporation retains counsel for legal advice respecting corporate affairs, the corporation is the cli-

ent, not the officers and directors, and an attorney of the corporation who then, or later, becomes part of its management does not acquire or create a conflict of interest with respect to the corporation-client (see Marco v. Dulles, *supra*). There is an identity of interest and his fiduciary duty to the corporation prevails in controlling his conduct.

■ So much for disqualification. The claim of evidentiary privilege is not of much moment and has not been seriously pressed by defendants. As noted, the corporations under new management have expressly waived such privilege. To the extent that it may be established that attorneys associated with the Davies firm received confidential information and gave legal advice to individual defendants with respect to matters aside from the business of the corporations, the evidentiary privilege will, of course, be recognized and enforced.

■ Defendants have made much of the so-called "theft" of the Davies files pertaining to FWFC and FWSLA at the time Webster and Brebbia severed connections with the firm on March 31, 1967. The facts belie the accusation. At the time of disassociation, it was plainly understood that Webster and Brebbia were taking the two corporate clients with them. A written agreement was entered into between the Davies firm and Webster and Brebbia respecting the files. While there may be some room for interpretation regarding who should have possession of the files, it is crystal clear under any interpretation of the agreement that Webster and Brebbia

were entitled to inspect and take copies of all portions of the files pertaining to the corporate businesses. The Davies firm has made no complaint and has taken no action to recover possession of the files. Thus it is an exercise in futility and irrelevancy for the individual defendants to attempt on this ground to suppress use of the files in this litigation. They are not and never have been intended to be retained in the secret and confidential vaults of the Davies firm. Accordingly,

It hereby is ordered:

1. Early in this litigation, the defendants filed a motion for a preliminary injunction and restraining orders, supported by affidavits, averring the conflicts of interest problem as a ground for the motions. On May 28, 1970, the Court denied the motions as premature.

On January 3, 1972, extensive discovery having been completed, the twenty defendants filed a motion to suppress the utilization of the Davies firm files and to enjoin plaintiff from using any information or leads from such files or from George D. Webster or John Henry Brebbia. This motion is hereby denied.

2. On November 1, 1971, plaintiff served and filed its First Set of Interrogatories to each of the following defendants: Fielding, Landa, Jones, Hellmer, Moss, Lahr, Goldwater, Sheppard, Francis, Holloman, Fletcher, Lacour, Antony, Rayson, Pullman, Ryan, Bastian, Kevoska, Finkelstein and Sally Neumeyer, Executrix. Interrogatories numbered 1 and 2 posed to each defendant are identical.[3] The purpose is to

---

3. INTERROGATORY NO. 1. Does defendant contend that any documents included in Defendants' Exhibits 4 through 35 are privileged as to defendant?

INTERROGATORY NO. 2. If the answer to Interrogatory No. 1 is in the affirmative, please identify each and every individual document in Defendants' Exhibits 4 through 35 which defendant contends is privileged as to him, and for each and every document please also state the following:

(1) As to each document, state the nature of each and every privilege being relied upon (e. g., attorney-client, accountant-client, or doctor-patient) ;

(2) As to each document for which the defendant relies upon the attorney-client privilege, state whether defendant is the attorney, the client, or some agent or intermediary ;

(3) As to each document for which the defendant relies upon the attorney-client privilege *as the client*, (a) state the name of the attorney or attorneys involved ; (b) state whether the defendant consulted said attorney in defendant's capacity as an individual or as an officer, director, or stock-

identify evidence as to which a defendant asserts a personal attorney-client evidentiary privilege. Defendants objected to them for the reasons asserted in the motion to suppress and for an injunction. In the light of the foregoing orders, the interrogatories are appropriate. Accordingly, it is ordered that each of said objecting defendants shall answer Interrogatories numbered 1 and 2 of the First Set of Interrogatories on or before July 1, 1972.

3. On October 28, 1971, plaintiff filed a request for production of documents by Alfons Landa and Delmar W. Holloman. On February 7, 1972, said defendants filed an objection and motion for a protective order upon the grounds (1) attorney-client privilege; (2) the attorney-client relationship; and (3) fruits of the tainted Webster-Brebbia relationship with the corporation. The Court cannot determine which, if any, of the specified documents is deemed privileged in assertion of a personal attorney-client relationship. It therefore is ordered that the objections to the requested production of documents be, and they hereby are, denied and the motion for a protective order is hereby denied. Said defendants are hereby ordered to produce such documents for inspection and copying within thirty (30) days from date, excepting only particular documents to be described in a supplemental motion for a protective order which shall be filed within fifteen (15) days from date and which shall assert a personal (as distinguished from corporate) attorney-client privilege and the grounds therefor.

holder of a business, and if as an officer, director, or stockholder, state the name of the business and defendant's position; and (c) state whether the privilege is jointly held with any other clients and the name of such other clients;

(4) As to each document for which the defendant relies upon the attorney-client privilege *as the attorney*, (a) state the name of the client or clients involved; (b) as to individual clients state whether such persons consulted defendant in their capacity as individuals or as officers, directors, or stockholders of a business, and if as officers, directors, or stockholders, state the name of the business and the client's position; and (c) state whether defendant also held any position in such business; and if so, state defendant's position in such business;

(5) As to each document for which the defendant relies upon the attorney-client privilege but defendant is not the actual sender or recipient of such communication, (a) state the basis upon which the defendant claims the privilege and (b) describe the relationship of the defendant to both the sender and the recipient of the communication;

(6) As to each document, state whether defendant contends such communication was confidential as between the sender and recipient.